IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MICHELLE KING, as the Personal Representative of the Estate of ROBERT GLENN KING,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED TEACHER ASSOCIATES INSURANCE COMPANY, CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN LIFE INSURANCE COMPANY, CONTINENTAL LTC, INC., fka CONTINENTAL INSURANCE, INC., and DOES I-V,<br><br>Defendants. | CV-21-87-GF-BMM<br><br>ORDER |

**INTRODUCTION**

Plaintiff Michelle King, as the Personal Representative of the Estate of Robert Glenn King ("Plaintiff"), brings this action against Defendants United Teacher Associates Insurance Company ("United Teacher"), Continental General Insurance Company, Great American Life Insurance Company ("Great American"), and Continental LTC, Inc., formerly know as Continental Insurance, Inc. Plaintiff asserts claims against the Defendant insurance providers for breach of contract, declaratory judgment, statutory punitive damages, and violation of Montana's Unfair Trade

Practices Act ("MTUTPA"). Great American moves to dismiss Plaintiff's claims for lack of jurisdiction and failure to state a claim. (Doc. 35.)

## BACKGROUND

Plaintiff's father, Robert King ("Mr. King"), purchased a long-term care insurance policy from Great American in July of 2004. Great American is an insurance company registered under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio. Mr. King lived in Louisiana when he purchased the policy. Mr. King's application to Great American disclosed that Mr. King lived in Montana for part of the year, and listed Plaintiff, who lived in Helena, Montana, as the beneficiary.

Great American and United Teacher entered into an Assumption Reinsurance Agreement for Mr. King's policy effective January 1, 2010. (Doc. 1-4.) Mr. King consented to the reinsurance agreement on August 10, 2010. (Doc. 1-6.) The reinsurance agreement provided that "[a]ll of the terms and conditions of the Policy remain unchanged, except that [United Teacher] shall be the insurer," and, as a result, "[a]ll premium payments, notices, claims and suits or actions of the Policy shall [t]hereafter be made to [United Teacher] as though it had issued the Policy originally." (Doc. 1-4.) The policy also provided that Mr. King retained "all rights with respect to your Policy against [Great American] in the event that [United Teacher] is unable to fulfill its obligations. In such event, [Great American] remains

liable to you notwithstanding the terms of its assumption agreement." (*Id.*)

Mr. King moved to Helena in August of 2011 to allow Plaintiff to assist him with his health care. Mr. King's physical condition continued to decline over the next several years. Mr. King ultimately became terminally ill with cancer and died on November 6, 2016. Plaintiff's claims arise out of the alleged failure of Defendant insurance providers to compensate Plaintiff adequately for the care she provided Mr. King in the final years of his life.

Plaintiff alleges that Great American continued to participate directly in handling Mr. King's insurance policy following the 2010 reinsurance agreement. Plaintiff alleges that, before Mr. King's death, Mr. King relied on telephone correspondence with Great American. (Doc. 38 at 4.) Plaintiff claims that the nurse who assessed Mr. King's health for the purposes of insurance coverage on August 2, 2016, was sent by Great American. (*Id.*) The nurse's evaluation confirmed Mr. King's eligibility for benefits and was sent on Great American letterhead. (Doc. 38-1 at 7.) Plaintiff corresponded with Great American regarding Mr. King's policy following Mr. King's death. (Doc. 13-1 at 14-17.) When Plaintiff "appealed" the determination of benefits coverage, the responding letterhead was Great American's once again. (Doc. 38-1 at 15.) It appears that Great American committed to reviewing Plaintiff's appeal. (Doc. 38-1 at 15.)

## LEGAL STANDARD

*Lack of jurisdiction*

Plaintiff bears the burden of establishing jurisdiction. *Nomad Glob. Commc'n Sols., Inc. v. Hoseline, Inc.*, 2021 WL 1400983, *4 (D. Mont. April 14, 2021). Where no applicable federal statute governs personal jurisdiction, "the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

Montana applies "a two-step test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 443 P.3d 407 (Mont. 2019); *see also Bird v. Hiller*, 892 P.2d 931 (Mont. 1995); *Cimmaron Corp. v. Smith*, 67 P.3d 258 (Mont. 2003). The Court must first determine "whether personal jurisdiction exists under Montana's long-arm statute." *Ford Motor Co.*, 443 P.3d at 412.

The long-arm statute provides as follows:

> [A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
> (A) the transaction of any business within Montana;
>
> (B) the commission of any act resulting in accrual within Montana of a tort action;
>
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
>
> (D) contracting to insure any person, property, or risk located within Montana at the time of contracting;

4

> (E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person[. . .]

Mont. R. Civ. P. 4(b)(1). If the long-arm statute is satisfied, the Court must determine whether exercising personal jurisdiction would be constitutional. *Bird*, 892 P.2d at 470; *Ford Motor Co.*, 443 P.3d at 412.

*Failure to state a claim*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the Complaint must contain sufficient factual matter to state a claim for relief that appears plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim appears plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Court must accept all allegations of material fact contained in the complaint as true when evaluating a Rule 12(b)(6) motion. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). The Court does not weigh the facts at the Rule 12(b)(6) stage, but merely assesses the sufficiency of Plaintiff's

allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court must look at the facts in the light most favorable to the Plaintiff when considering a motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009).

## ANALYSIS

**I. Plaintiff's allegations and supporting documents demonstrate that the Court should maintain personal jurisdiction over Great American at this stage of the proceeding.**

Great American argues that this Court asserting jurisdiction over Mr. King's claims would violate Montana's long-arm statute and due process. Great American's argument relies largely on the assertion that, following the assumption of Mr. King's policy by United Teacher, "Great American had no involvement with or participation in the administration, handling, or claims processing" of Mr. King's policy. (Doc. 43 at 11.) The record before the Court cuts against Great American's assertion.

    **a.** **Montana's long-arm statute**

The Court determines that personal jurisdiction exists under the Montana long-arm statute. Plaintiff alleges sufficient facts to suggest that Great American contracted to insure Mr. King while he lived in the State of Montana. *See* Mont. R. Civ. P. 4(b)(1)(D). The evidence before the Court suggests that Great American maintained contingent liability to Mr. King and may have continued to handle or

process the insurance policy following the reinsurance agreement.

The reinsurance agreement for Mr. King's policy provided that United Teacher would "be the insurer" of Mr. King's policy and that "[a]ll premium payments, notices, claims and suits or actions of the Policy shall [t]hereafter be made to [United Teacher] as though it had issued the Policy originally." (Doc. 1-4). This provision admittedly shifts the primary role of insurance policy provider to United Teacher. The reinsurance agreement also provided, however, that Mr. King retained "all rights with respect to your Policy against [Great American] in the event that [United Teacher] is unable to fulfill its obligations. In such event, [Great American] remains liable to you notwithstanding the terms of its assumption agreement." (*Id.*) The reinsurance contract is clear—Great American retains liability to Mr. King under his original insurance policy, contingent on United Teacher's failure to perform.

Great American's contingent liability to Mr. King under the insurance policy meets the requirements of the Montana long-arm statute. This determination proves especially true where, as here, the contingency for Great American to assume liability of Mr. King's policy—United Teacher's alleged failure to perform—provides the foundation of Plaintiff's claims. Great American cannot reasonably argue that it shed all contractual responsibility to insure Mr. King. The reinsurance agreement establishes that liability may fall to Great American to act as Mr. King's

7

insurer at any time.

Great American cites *Davis v. Am. Fam. Mut. Ins. Co.*, 861 F.2d 1159, 1162 (9th Cir. 1988), and *Carter v. Mississippi Farm Bureau Casualty Insurance Company*, 109 P.3d 735 (Mont. 2005), for the proposition that the insured party must reside in Montana while the insurance contract is in effect to comply with the Montana long-arm statute. (Doc. 36 at 13-14.) The Court agrees with Great American's summary of those cases. Great American fails to reconcile those cases, however, with the fact that Great American retained liability to Mr. King under the insurance agreement while he lived in Montana. Unlike the insurance providers in *Davis* or *Carter*, Great American was a party to Mr. King's insurance policy while Mr. King resided in Montana.

Even if Great American's contingent liability proved insufficient to confer jurisdiction under Montana's long-arm statute, Great American also appears to have played a direct role in handling Mr. King's insurance policy while Mr. King lived in Montana. Multiple communications regarding Mr. King's policy were on Great American letterhead. Great American presumably sent these communications. (Doc. 38-1 at 7-10, 15.) Great American dismisses the documents as a "red herring." Great American argues that United Teacher actually sent the documents.

At the pleadings stage, the Court must view these documents as supporting Plaintiff's allegations that Great American continued to be involved in the handling

and processing of Mr. King's policy. Not only do the correspondence documents appear to be from Great American, the documents contain no mention of United Teacher or any role that it played. (*Id.*) Plaintiff addressed the letter to Great American when Plaintiff attempted to contest the payment that they received from Mr. King's policy. (*Id.* at 14.) Great American responded. (*Id.* at 15.) Plaintiff also alleges that Great American exercised control over Mr. King's nurse evaluator and the claims adjustment process. Plaintiff's allegations, supported by the record before the Court at this stage, prove sufficient to satisfy Montana's long-arm statute.

**b.    Due process**

The Court next must evaluate whether asserting personal jurisdiction over Great American would comport with due process. The Fourteenth Amendment's Due Process Clause limits a court's power to exercise jurisdiction over a defendant. A tribunal's authority depends on a defendant's "contacts" with the forum state such that maintenance of a suit would prove "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–317 (1945). The Court may exercise jurisdiction only when a company "'purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, __ U.S. __, __, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In other words, the

company must "exercise[] the privilege of conducting activities" within the forum. *Int'l Shoe Co*, 326 U.S. at 319.

The Court follows the Ninth Circuit's three-part test to determine whether the requirements of due process have been met:

(1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). A court presumes reasonableness where a defendant purposefully availed himself of the privilege of doing business in the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Asserting jurisdiction over Great American comports with constitutional due process requirements. Great American purposefully availed itself to the privilege of conducting activities in Montana as party to an insurance contract with a Montana resident. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1131 (9th Cir. 2003) As discussed above, Great American appears to have handled multiple facets of Mr. King's policy while he lived in Montana.

Great American's argument against the Court maintaining jurisdiction relies

primarily on the assertion that Plaintiff cannot establish a harm resulting from Great American's activities because United Teacher assumed Mr. King's insurance policy before Mr. King became a Montana resident. The Court determines that Plaintiff's suit arises out of Great American's forum-related activities.

Plaintiff claims that Great American violated the terms of Mr. King's policy. As discussed above, United Teacher's alleged failure to compensate Plaintiff properly under the terms of Mr. King's policy serves as the foundation of Plaintiff's suit. This failure to perform would invoke Great American's responsibilities under the reinsurance agreement. (Doc. 1-4). Plaintiff's claims arise from those alleged activities while Plaintiff resided in Montana. Plaintiff alleges that Great American's mishandled Mr. King's policy and maintained liability to perform Mr. King's policy in the event that United Teacher failed to do so while Mr. king was a Montana-resident.

The Court presumes reasonableness here for purposes of due process. The record before the Court and Plaintiff's allegations demonstrate that Great American purposefully availed itself of the privilege of doing business in Montana. *See Ballard v. Savage*, 65 F.3d at 1500.

## II. Plaintiff alleges sufficient facts to state a claim for relief against Great American.

Great American argues that Plaintiff fails to state a plausible claim for many of the same reasons that it argued jurisdiction was improper. Great American argues

that Plaintiff's breach of contract claim fails because the reinsurance agreement ended Great American's relationship to Mr. King's policy. (*See* Doc. 36 at 22-23.) Great American claims that it thus did not handle any part of Mr. King's policy at a time relevant to this lawsuit. As the Court discussed above, Great American had a continued contractual relationship with Mr. King under the reinsurance agreement that provided Great American would resume liability should United Teacher fail to perform. Additionally, the record before the Court and Plaintiff's allegations appear to demonstrate that Great American participated in handling Mr. King's policy after the reinsurance agreement.

Great American argues that Plaintiff's claims under the MTUTPA fail for three reasons: 1) Great American did no business with Mr. King in Montana; 2) Plaintiff has alleged no monetary loss as a result of Great American's actions; and 3) the statute of limitations has passed for a MTUTPA claim against Great American because the reinsurance agreement with United Teacher took place in 2010. (Doc. 36 at 24-27.) As discussed above, Plaintiff alleges sufficient facts that Great American continued to conduct business with Mr. King in Montana. Plaintiff alleges that she has suffered damages as a result of Great American's failure to compensate her for Mr. King's care. (Doc. 3 ¶ 105.)

The Court will allow Plaintiff's claims for punitive damages to move forward at this stage. Actual fraud is sufficient to establish punitive damages under Montana

law. *See* Mont. Code Ann. 27-1-221(1). Montana law defines actual fraud as representation with "knowledge of its falsity; or [] concealment [of] a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury [when] plaintiff has a right to rely upon the representation [] and suffers injury as a result of that reliance." Mont. Code Ann. 27-1-221(2)-(4). Plaintiff alleges that Great American knowingly misled Plaintiff about the requirements for her to receive compensation for the care she provided to Mr. King. (*See* Doc. 3 at ¶¶ 54-57.) Plaintiff's allegations prove sufficient to maintain a plausible claim for punitive damages in that she has alleged a knowing false representation that deprived Plaintiff of a contractual right.

## ORDER

Accordingly, **IT IS ORDERED** that:

- Great American's motion to dismiss (Doc. 35) is **DENIED**.

DATED this 16th day of February, 2022.

_____
Brian Morris, Chief District Judge
United States District Court