**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| MICHELLE KING, as the Personal Representative of the Estate of ROBERT GLENN KING,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED TEACHER ASSOCIATES INSURANCE COMPANY, CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN LIFE INSURANCE COMPANY, CONTINENTAL LTC, INC. fka CONTINENTAL INSURANCE, INC., and DOES I-V,<br><br>      Defendants. | CV-21-87-GF-BMM<br><br>**ORDER** |

**INTRODUCTION**

Michelle King, as the Personal Representative of the Estate of Robert Glenn King ("Plaintiff"), filed suit against United Teacher Associates Insurance Company ("United Teacher"), Continental General Insurance Company, and Continental LTC, Inc., formerly known as Continental Insurance, Inc. ("collectively, "Continental.") (Doc. 1.) Plaintiff also named Great American Life Insurance Company ("Great American") as a defendant (all defendants collectively, "Defendants.") (*Id.*) Plaintiff

has filed a motion for partial summary judgment. (*See* Doc. 53); (Doc. 69); (Doc. 70.) Continental opposes this motion. (Doc. 59.) Great American also opposes this motion. (Doc. 62.) The Court held a hearing on the motion on July 12, 2023, in Great Falls, Montana. (Doc. 72.)

## FACTUAL BACKGROUND

Plaintiff's father, Robert King ("Mr. King"), purchased a long-term care insurance policy ("Policy") from Great American in July 2004. Great American and United Teacher entered an Assumption Reinsurance Agreement for Mr. King's policy effective January 1, 2010. (Doc. 1-4.) Mr. King consented to the reinsurance agreement on August 10, 2010. (Doc. 1-6.)

The reinsurance agreement provided that "[a]ll of the terms and conditions of the Policy remain unchanged, except that [United Teacher] shall be the insurer." (Doc. 1-4.) The change to United Teacher as the insurer required that "[a]ll premium payments, notices, claims and suits or actions of the Policy shall [t]hereafter be made to [United Teacher] as though it had issued the Policy originally." (*Id.*) The policy also provided that Mr. King retained "all rights with respect to your Policy against [Great American] in the event that [United Teacher] is unable to fulfill its obligations. In such event, [Great American] remains liable to you notwithstanding the terms of its assumption agreement." (*Id.*)

The Policy provided benefits to Mr. King for services such as facility care or

in-home care if he met the eligibility requirements. (Doc. 53-1 at 2-3) (citations omitted.) The Policy also included an "Alternate Payment Benefit Rider" ("Rider') that paid $1,000 per month if Mr. King met the eligibility requirements for the care facility benefit. (Doc. 53-4.) The Rider reads as follows:

> This Rider is made a part of Your policy. It does not vary, waive, alter, or extend any of the terms, conditions, or provisions of Your policy, except as stated herein. Once You have been certified to meet the requirements found in the ELIGIBILITY FOR THE PAYMENT OF BENEFITS provision in the Policy because:
>
>   1. You are unable to perform, without Substantial Assistance from another person, at least 2 Activities of Daily Living for a period of at least 90 consecutive days due to a loss of functional capacity; or
>
>   2. You require Substantial Supervision to protect Yourself from threats to health and safety due to a Severe Cognitive Impairment; and
>
>   3. A Licensed Health Care Practitioner has certified, within 12 months, that You meet the Activity of Daily Living or the Severe Cognitive Impairment requirements above, and has developed a written Plan of Care which details the Qualified Long Term Care You need.

(*Id.* at 6.) The Rider further provides that United Teacher "will pay You a Monthly Cash Indemnity Benefit amount equal to [ten (10)] times the Maximum Daily Home and Community Care Benefit shown in the Policy Schedule in advance for each calendar month You continue to meet those requirements." (*Id.*) United Teacher agreed to "pay this cash benefit in lieu of

3

all other benefits for care and services provided under this Policy. . ..." (*Id.*)

The "Eligibility for the Payment of Benefits" section of the Policy directs that United Teacher would pay benefits upon the following conditions:

1. You are unable to perform, without Substantial Assistance from another person, at least 2 Activities of Daily Living for a period of at least 90 consecutive days due to a loss of functional capacity (note: if the Elimination Period selected is less than 90 days, You must be certified by a Licensed Health Care Practitioner as meeting the 90 consecutive days of functional incapacity requirement in order for any benefits to be paid); or

2. You require Substantial Supervision to protect Yourself from threats to health and safety due to a Severe Cognitive Impairment; and

3. A Licensed Health Care Practitioner has certified, within 12 months, that You meet the Activity of Daily Living or the Severe Cognitive Impairment requirements above, and has developed a written Plan of Care which details the Qualified Long Term Care You need.

(*Id.* at 13.)

The Policy defines "Licensed Health Care Practitioner" as "[a]ny physician, registered professional nurse or licensed social worker or other individual who meets such requirements as may be prescribed by the Secretary of the Treasury of the United States. The Licensed Health Care Practitioner must not be a member of Your Immediate Family. . .." (*Id.* at 10.) The Policy defines "Plan of Care" as "[a] program of care and services: 1. Initiated by and created by a Licensed Health Care Practitioner before the start of such care and treatment or within thirty (30) days after

4

a claim is submitted; and 2. Confirmed in writing if there is a change in health status after the start of such care and treatment or annually if there is no change in health status; and 3. That is approved by Us." (*Id.* at 11.) Finally, the Policy defines "Qualified Long Term Care" as "[n]ecessary diagnostic, preventive, therapeutic, curing, treating, mitigating, and rehabilitation services, and maintenance or personal care services, which: 1. Are required by a chronically ill individual; and 2. Are provided pursuant to a plan of care prescribed by a licensed health care practitioner." (Doc. 61-1 at 24.)

Plaintiff claims that Defendants failed to compensate Plaintiff and Mr. King adequately for covered benefits owed to Mr. King in the final years of his life. Plaintiff asserts that Defendants should have paid Mr. King benefits under the Rider for a period of several years, likely from 2013 until 2016. (*See* Doc. 1.) Mr. King moved to Plaintiff's residence in Helena, Montana in August 2011 to enable Plaintiff to provide for his healthcare needs. Mr. King's physical condition deteriorated over the next several years. Mr. King ultimately became terminally ill with cancer and died on November 6, 2016. Plaintiff assisted with Mr. King's care until his death.

Defendants paid $3,197 to Plaintiff on December 7, 2016, under the Rider. (Doc 53-11 at 1.) The Explanation of Benefits accompanying the payment lists period of benefits as starting on August 2, 2016, the date of the health assessment, and ending on November 6, 2016, the date of Mr. King's death. (*See id.*) Plaintiff

appealed this determination of benefits coverage based on the claim that Mr. King's eligibility for benefits under the Rider began before August 2, 2016. (Doc. 53-9 at 1); (Doc. 53-15 at 1.) Defendants denied Plaintiff's appeal. The denial explained that a "Senior Care Managed Care Specialist . . . reviewed the documents submitted for the appeal and it is her professional opinion that Mr. King[] met the benefit eligibility requirements the date of the onsite assessment performed on August 2, 2016. We have determined that we cannot backdate the claim as requested in your appeal." (Doc. 53-15 at 1.)

## LEGAL BACKGROUND

The Court denied Great American's motion to dismiss on February 16, 2022. (Doc. 47.) The Court ordered counsel to confer and file a proposed stipulation as to what issues exist, if any, concerning Plaintiffs motion for partial summary judgment. (*See* Doc. 72.) The parties failed to any stipulation by the Court's deadline of July 21, 2023.

## LEGAL STANDARD

The Court will grant summary judgment when the moving party demonstrates both an absence of material facts or issues and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The summary judgment inquiry requires examining the evidence, and inferences drawn therefrom, in the light most favorable to the nonmovant. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014.)

## DISCUSSION

The Court will discuss Plaintiff's motion for summary judgment concerning the interpretation of the Rider's terms. The Court also will consider Great American's contention that it is not a party to the Policy or Rider contract.

### A. Whether the Rider Allows Benefits if a Family Member Provided Care.

Plaintiff seeks summary judgment on a narrow issue: whether Plaintiff's caregiving, provided by Mr. King's immediate family member, disqualified Mr. King from receiving benefits under the Rider. (Doc. 53.) Federal courts exercising diversity jurisdiction must apply the substantive law of the state in which they are located. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Montana law provides that interpretation of an insurance contract represents a question of law. *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 353 (Mont. 2013). "Every insurance

contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application which is a part of the policy." Mont. Code. Ann. § 33-15-316.

A court must read the policy as a whole and, if possible, reconcile its various parts to give each meaning and effect. *Newbury v. St. Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025 (Mont. 2008). "The language of the policy governs if it is clear and explicit." *Loendorf v. Emps. Mut. Cas. Co.*, 513 P.3d 1268, 1271 (Mont. 2022) (citations omitted). A court should interpret an insurance policy's terms "according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Id.* (citing *Park Place Apartments, L.L.C. v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010.))

Plaintiff contends that the Rider contains no benefit limitation for care provided by family members. (Doc. 53-1 at 15.) The Court agrees. The Rider, interpreted from the perspective of a reasonable consumer of insurance products, contains no limitation as to who may provide care covered by the Rider's benefit. *See Loendorf*, 513 P.3d at 1271. The Rider stands in contrast to other benefits provided by the Policy.

The Home and Community Care Benefit pays benefits when the policy holder requires "Home and Community Care or Hospice Services. Home and Community Care includes Qualified Long Term Care Services received from a Home Health Care Provider, an Independent Caregiver, or an Adult Day Care Center." (Doc. 53-4 at 17.) As defined in the Policy, a Home Health Care Provider "cannot be a member of Your Immediate Family or anyone living with you." (*Id.* at 10.) Similarly, "an Independent Caregiver cannot be a member of Your Immediate Family or anyone living with you." (*Id.* at 11.) By contrast, nothing in the Rider requires that the care received by the policy holder come from a "Home Health Care Provider," "an "Independent Caregiver," or any other specific source. (*Compare id.* at 6): (*Id.* at 10-11.)

The Rider admittedly incorporates the Eligibility for Payment of Benefits section. This section uses the term "Licensed Health Care Practitioner." (*Id.* at 15.) The Rider likewise expressly uses the term "Licensed Health Care Practitioner". (*Id.*) As defined in the Policy, the term Licensed Health Care Practitioner means "[a]ny physician, registered professional nurse, or licensed social worker or other individual who meets such requirements as may be prescribed by the Secretary of the Treasury of the United States. The Licensed Health Care Practitioner must not be a member of Your Immediate Family." (*Id.* at 11.)

The Eligibility for Payment of Benefits section prescribes no means and methods of treatment. The Eligibility for Payment of Benefits section, considered in the context of the entire Policy, sets out the initial qualification a policy holder must meet for the holder to seek any benefit under the Policy. The Rider never uses the term Licensed Health Care Practitioner in the context of prescribing the treatment to be received by the policy holder. The Rider uses the term in an identical way to the Eligibility for Payment of Benefits section.

The Rider requires that a policy holder establish eligibility based on these criteria: 1) by demonstrating that the policy holder cannot perform 2 Activities of Daily Living without Substantial Assistance for at least 90 days, or by demonstrating that a Severe Cognitive Impairment requires Substantial Supervision; and 2) by demonstrating that a Licensed Health Care Practitioner has certified that the policy holder has met "the Activity of Daily Living or the Severe Cognitive Impairment requirements," and that a Licensed Health Care Practitioner "has developed a written Plan of Care which details the Qualified Long Term Care You need." (*See id.* at 6.) The Rider contains no requirement that the Licensed Health Practitioner necessarily must provide the care. The existence of a Plan of Care developed by a Licensed Health Practitioner serves as the mechanism to trigger eligibility for the Rider's benefits. (*Id.*)

The Policy provides for the payment of benefits when an eligible policy holder receives any of the following treatment: Qualified Long Term Care, Hospice Care, Respite Care, or rental or lease of Home Medical Technology. (*See, e.g.*, *id.* at 17-20.) The Facility Benefit, for example, states that Defendants will pay the benefit "for each day Qualified Long Term Care is received in a Long Term Care Facility." (*Id.* at 19.) The Home and Community Care Benefit provides benefits when "[an insured requires] Home and Community Care or Hospice Services. Home and Community Care includes Qualified Long Term Care Services received from a Home Health Care Provider, an Independent Caregiver or an Adult Day Care Center." (*Id.* at 17.) The Respite Care Benefit similarly directs that Defendants will pay the benefit "for each day Respite Care is received in a Long Term Care Facility" or "for each day Respite Care is received in Your Home." (*Id.* at 19.) The Home Medical Technology Benefit pays benefits "for the actual expense [an insured incurs] each month . . . for the rental or lease of Home Medical Technology specified in [the] Plan of Care." (*Id.* at 18.)

The Rider, in contrast, contains no similar requirement that the policy holder receive specific care from a medical provider.  In fact, the Rider simply directs payment under the following circumstances:

> Once You have been certified to meet the requirements found in the ELIGIBILITY FOR THE PAYMENT OF BENEFITS provision . . . Then We will pay You a Monthly Cash Indemnity Benefit amount equal to [ten (10)] times the Maximum Daily Home and Community Care Benefit shown in the

11

> Policy Schedule in advance for each calendar month You continue to meet those requirements. We will pay this cash benefit in lieu of all other benefits for care and services provided under this Policy. . ..

(*Id.* at 6.) The Rider, by its own terms, contains no requirement that the policy holder detail the Qualified Long-Term Care that the policy holder receives. The determination of eligibility represents the triggering event for the Rider. (*Id.*) The Rider further provides for a monthly cash indemnity upon the eligibility determination. (*Id.*) The Rider remains silent both as to the type of care provided and as to who must provide the care. (*Id.*)

Continental argues that the Court cannot interpret the Rider to determine whether the Rider excludes coverage for care provided by a family member. Continental contends that this determination would require a coverage evaluation. (*See* Doc. 59 at 18.) Great American echoes this contention. (*See* Doc. 62 at 8.) Defendants seemingly misconstrue Plaintiff's motion as asking for the Court to decide whether Mr. King qualified for a benefit under the Rider or the Policy. The Court simply has interpreted the language of the Rider and the Policy pursuant to Montana law. *Newman*, 301 P.3d at 353; Mont. Code. Ann. § 33-15-316. The Court narrowly has concluded that the Rider does not categorically exclude coverage for care provided by a family member. Any determination of whether Mr. King qualified for a benefit or benefits would be premature. Genuine issues of material facts remain

in dispute as to what Policy benefits or Rider benefits, if any, Mr. King may have qualified for. *Anderson*, 477 U.S. at 248.

### B. Whether the Court's Interpretation of the Rider Binds Great American.

The Court notes at the outset that Plaintiff filed two replies: one to Continental's response (Doc. 59) and one to Great American's response (Doc. 62). (*See* Doc. 69); (Doc. 70.) The Court recognizes that Plaintiff's filing of two replies violates Local Rule 7.1(d)(1)(C)-(D), which allows for the moving party to file *a* reply within 14 days of the response being entered into the docket, but requires prior leave to file further briefing. (emphasis added). The Court declines to consider Plaintiff's second reply (Doc. 70).

Great American argues that Mr. King's consent to the transfer of the Policy to United Teacher relieves it of the obligation to comply with the terms of the Policy. (Doc. 62 at 6-11.) Great American contends that its lack of privity of contract with Mr. King beyond 2010 defeats Plaintiff's motion for partial summary judgment. (*Id.*) Great American's arguments prove unavailing. The Court previously denied Great American's motion to dismiss. (*See* Doc. 47.) The Court recognized that Great American had a continued contractual relationship with Mr. King under the reinsurance agreement. (*Id.* at 12.)

The reinsurance agreement provided that Great American would resume liability should United Teacher fail to perform. (*Id.*) The reinsurance agreement

allowed Mr. King to retain "all rights with respect to your Policy against [Great American] in the event that [United Teacher] is unable to fulfill its obligations. In such event, [Great American] remains liable to you notwithstanding the terms of its assumption agreement." (*Id.* at 7) (citation omitted.) Great American remains in a contractual relationship with Mr. King through the reinsurance agreement. Great American remains bound by the Court's interpretation of the Rider. The Court makes no determination at this stage as to what benefits, if any, Mr. King would qualify for pursuant to the Policy, the Rider, or both.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiff's First Motion for Summary Judgment (Doc. 53) is **GRANTED.** Plaintiff's caregiving does not categorically exclude Mr. King from receiving benefits under the Rider. The Court makes no ruling as to what benefits, if any, Mr. King qualified for.

DATED this 30th day of October, 2023.

_____
Brian Morris, Chief District Judge
United States District Court