Maxon Davis, Esq.
DAVIS HATLEY HAFFEMAN & TIGHE, P.C.
101 River Drive North
The Milwaukee Station, 3rd Floor
Great Falls, MT 59401
T:  (406) 761-5243
max.davis@dhhtlaw.com

Sandra K. Jones, Esq.
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
T: (215) 988-2700
F: (215) 988-2757
sandra.jones@faegredrinker.com
*Attorneys for Defendants*
*Continental General Insurance Company,*
*United Teacher Associates Insurance Company,*
*And Continental LTC, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| MICHELLE KING, as the Personal Representative of the Estate of ROBERT GLENN KING, Plaintiff, vs. UNITED TEACHER ASSOCIATES INSURANCE COMPANY, CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN LIFE INSURANCE COMPANY, CONTINENTAL LTC, INC., fka CONTINENTAL INSURANCE, INC., and DOES 1-V, Defendants. | Cause No. CV-21-87-GF-BMM<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

## TABLE OF CONTENTS

i

INTRODUCTION ..................................................**Error! Bookmark not defined.**

BACKGROUND ..................................................**Error! Bookmark not defined.**

LEGAL STANDARD ............................................**Error! Bookmark not defined.**

LEGAL ARGUMENT ...........................................**Error! Bookmark not defined.**

    A.    Request No. 8 – All Electronically-Stored Documents
Containing the Words "Alternate Payment Benefit Rider," or
"Alternative Payment Benefit Rider.".**Error! Bookmark not defined.**

        1.    "Electronically-stored documents" simply containing the
words "Alternate Payment Benefit Rider" are not
Relevant Here...........................**Error! Bookmark not defined.**

        2.    Continental's Other Objections are Proper. ...**Error! Bookmark not defined.**

    B.    Request Nos. 29 and 30......................**Error! Bookmark not defined.**

    C.    The 111 Claim Files ("Request 31") ...**Error! Bookmark not defined.**

        1.    There is No Support for Production of the 111 Claim
Files..........................................**Error! Bookmark not defined.**

            a.    Mr. King is the only Montana insured to
Receive Payment Under the Rider. **Error! Bookmark not defined.**

            b.    Request 31 is Not Properly Limited.................**Error! Bookmark not defined.**

            c.    Plaintiff ignores this Court's obligation –
separate and apart from HIPAA – to protect the
privacy of other insureds by limiting discovery
to only relevant information.... **Error! Bookmark not defined.**

CONCLUSION ......................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Bentle v. Farmers Ins. Exch.*,
    No. 2:21-cv-27, 2022 WL 17787286 (D. Mont. Dec. 19, 2022)
    (Morris, C.J.), *aff'd* No. 23-35020, 2023 WL 7549512 (9th Cir.
    Nov. 14, 2023) ...................................................................................2

*Brodowy v. Progressive Direct Ins. Co.*,
    No. CV 22-30-H-KLD, 2023 WL 5670003 (D. Mont. Sept. 1,
    2023) ...................................................................................................3

*Bromgard v. Montana*,
    No. CV-05-32-BLG-RFC-CSO, 2007 WL 2710379 (D. Mont.
    Sept. 13, 2007) .................................................................................21

*Caballero v. Bodega Latina Corp.*,
    No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931 (D. Nev. July
    25, 2017) ...........................................................................................12

*Clark v. Tessema.*,
    No. RWT-10-848, 2011 WL 337344 (D. Md. Jan. 31, 2011) ............22

*Coleman Const., Inc. v. Diamond State Ins. Co.*,
    No. CV 05-184-M-JCL, 2008 WL 2357365 (D. Mont. June 5,
    2008) ...................................................................................................3

*Dobro v. Allstate Ins. Co.*,
    No. 16CV1197-AJB (BLM), 2016 WL 4595149 (S.D. Cal. Sept. 2,
    2016) .................................................................................................16

*E.E.O.C. v. Jewel Food Stores, Inc.*,
    231 F.R.D. 343 (N.D. Ill. 2005) .......................................................12

*Enciso v. Jackson Nat'l Life Ins. Co.*,
    No. CV 21-9205-DMG, 2023 WL 9687512 (C.D. Cal. Nov. 30,
    2023) ...........................................................................................16, 18

*Garber v. Nationwide Mut. Ins. Co.*,
    No. 5:21-CV-00546-HNJ, 2022 WL 1420916 (N.D. Ala. Mar. 24,
    2022) ...................................................................................................9

*Kamakana v. City and County of Honolulu*,
    447 F.3d 1172 (9th Cir. 2006) ............................................................21

*Lyms, Inc. v. Millimaki*,
    No. 08-CV-1210-GPC-NLS, 2010 WL 11508870 (S.D. Cal. Feb.
    18, 2010) ............................................................................................22

*McDowell v. United States*,
    No. EDCV19631JGBSPX, 2019 WL 8750360 (C.D. Cal. Dec. 11,
    2019) ..................................................................................................23

*Micron Tech., Inc. v. Factory Mut. Ins. Co.*,
    No. 3:18-cv-07689-LB, 2022 WL 1687154 (N.D. Cal. 2022) ...................*passim*

*Moe v. GEICO Indem. Co.*,
    No. CV 19-23-BU-BMM-KLD, 2021 WL 4244986 (D. Mont.
    Sept. 15, 2021) ........................................................................3, 15, 20

*Moe v. System Transport, Inc.*,
    270 F.R.D. 613 (D. Mont. 2010) ......................................................15

*Nei v. Travelers Prop. Cas. Co. of Am.*,
    326 F.R.D. 652 (D. Mont. 2018) ......................................6, 13, 14, 15

*Nowak v. Lexington Ins. Co.*,
    No. 06-20530-CIV, 2006 WL 3613764 (S.D. Fla. Oct. 31, 2006) ......................9

*One Source Env't, LLC v. M + W Zander, Inc.*, No. 2:12–cv–145,
    2015 WL 4663851 (D. Vt. Aug. 6, 2015) ..........................................22

*Pac. Hide & Fur Dept v. Great Am. Ins. Co.*,
    No. CV-12-36-BU-DLC, 2013 WL 11029340 (D. Mont. 2013) .............8, 18, 20

*Phillip Morris USA v. Williams*,
    549 U.S. 346 (2007) ..........................................................................13

*Ruggles v. WellPoint, Inc.*,
    2010 WL 11570681 (N.D.N.Y. Dec. 28, 2010) ................................22

*Schulz v. Mt. West Farm Bureau Mut. Ins. Co.*,
    No. CV 20-88-M-DLC, 2021 WL 322725 (D. Mont. Feb. 1, 2021)...................6

*Seltzer v. Morton*,
154 P.3d 561 (Mt. 2007) ...................................................................................13

*Smith et al. v. BNSF Railway Corp.*,
No. CV-23-82-GF-BMM, 2024 WL 4958182 (D. Mont. 2024) .........................6

*State Farm Auto Ins. Co. v. Campbell*,
538 U.S. 408 (2007).................................................................................13, 15

*U.S. v. Luchko,No. CRIM.A.*
06–319, 2007 WL 1651139 (E.D. Pa. 2007) ...................................................22

*U.S. v. Smith*,
985 F. Supp. 2d 506 (S.D.N.Y. 2013) .............................................................22

*U.S. v. W.R. Grace*,
401 F.Supp.2d 1093 (D. Mont. 2005)..............................................................22

*United States v. Cudd*,
534 F. Supp. 3d 48 (D.D.C. 2021) ..................................................................22

**Statutes, Rules & Regulations**

45 C.F.R. 164.502(b) .......................................................................................23

45 C.F.R. 164.512(e)(1)(ii)(A)-(B)...................................................................23

45 C.F.R 164.512(e)(v) ....................................................................................23

45 C.F.R. § 164.501 .........................................................................................23

26 U.S.C. § 7702(B)...........................................................................................2

ERISA ...............................................................................................................22

HIPAA.............................................................................................20, 21, 22, 24

§ 164.512(e) of HIPAA.....................................................................................23

Local Rule 5.1(b)(4)............................................................................................1

Mont. Code Ann. § 33-18-242(8)(a)...................................................................3

Rule 26 ................................................................................................3, 9, 17, 18

Rule 26(b)(1)..................................................................................8, 9, 12

Rule 37 ..................................................................................................5

Unfair Trade Practices Act (UTPA) ................................................2, 3, 14

COME NOW United Teacher Associates, Inc., Continental LTC, Inc., and Continental General Insurance Company (collectively, "Continental") and respectfully respond to Plaintiff's Motion to Compel [Dkt. 112] as follows:

**INTRODUCTION**

The instant discovery dispute boils down to relevance. Michelle King ("Plaintiff") cannot cite to one case, from any jurisdiction, to support her request for un-redacted claim files of over one hundred other long-term care insureds. And aside from the fact that none of the other insureds are Montana residents, Plaintiff is fishing for a class action. But this Court already told Plaintiff's counsel this dispute would not turn into a class action – nor could it. The facts of this case (which are far more robust than Plaintiff has told the Court) are unique.

Plaintiff's Motion – and entire case – hinges on an objectively untrue theory that Continental "falsely told Robert King that his long-term care policy pays nothing when his care is provided by his daughter." But Continental never said the policy "pays nothing." Rather, three years before any claim was submitted, when Robert King called to ask whether he had to continue paying premiums, Continental accurately informed him that the Policy "would not **reimburse**" him if his daughter provided care. *See* Exhibit A, a transcript of the 2013 telephone call recording (the

"2013 Call")[1].  The distinction between Plaintiff's false assertion (that Continental said the "Policy pays nothing") and the truth (that Continental said the Policy would "not reimburse" for care provided by the insured's daughter) is critically important. This Policy, like most tax-qualified long-term care insurance policies, is primarily intended to *reimburse* insureds for the actual costs they incur for long-term care.  26 U.S.C. § 7702(B).  Conversely, the Alternate Benefit Payment Rider ("Rider") attached to this Policy pays a prospective monthly *indemnity* benefit as a lesser alternative to the daily reimbursement benefits – meaning that if the insured satisfies the terms of the Rider, they will receive in advance of each month a lower, fixed payment, regardless of the amount they might incur for care costs.  The questions asked by Mr. King in the 2013 Call were about waiver of premium, first and foremost, but otherwise about *reimbursement* for cost of care received (from Veterans' Affairs and Plaintiff).  Continental properly explained that while the Policy would not *reimburse* for care provided by the VA or the Plaintiff (or care already reimbursed by Medicare), there were a range of other sources from which care could be provided and costs reimbursed.

The Unfair Trade Practices Act (UTPA) does not impose liability for truthful statements.  *Bentle v. Farmers Ins. Exch.*, No. 2:21-cv-27, 2022 WL 17787286, at

---

[1]    An actual recording of this call, which allows the Court to hear the inflection and tone of Mr. King and Continental, has been delivered to the Court in compliance with the Local Rule 5.1(b)(4).

*4 (D. Mont. Dec. 19, 2022) (Morris, C.J.) ("[a]n insurer's duty under subsection 33-18-201(1) 'is simply to be truthful in its representations regarding the coverage provisions of an insurance policy.'"), *aff'd* No. 23-35020, 2023 WL 7549512 (9th Cir. Nov. 14, 2023).[2]  Likewise, Plaintiff has no legal support or evidence to prove her theory that Continental should have "interpret[ed] [Mr. King's question about waiver of premium in 2013]. . . as asking if the company would pay him benefits." Without evidence of wrongdoing by Continental as to Mr. King, there is no evidence that Continental did "this" to anyone else.

Rule 26 bars fishing for a class action.  In 2023, Plaintiff's counsel offered to dismiss Ms. King's case without receiving a dime from Continental in exchange for a list of *other insureds*.  *See* 2023 Correspondence, Exhibit B.  Because Counsel knows Plaintiff has no case here, they hope to find a better plaintiff.  With no legal basis for the current relief sought, this Court should deny the Motion.

---

[2]    Beyond that, the UTPA does not apply to the February 2013 Call because it occurred more than three (3) years prior to the submission of Mr. King's claim, meaning the UTPA was not yet triggered when the call occurred. *Coleman Const., Inc. v. Diamond State Ins. Co.*, No. CV 05-184-M-JCL, 2008 WL 2357365, at *3 (D. Mont. June 5, 2008) ("[T]he duties imposed upon a liability insurer by 33-18-201 are 'triggered' when a claim is made."); *Moe v. GEICO Indem. Co.*, No. CV 19-23-BU-BMM-KLD, 2021 WL 4244986, at *6 (D. Mont. Sept. 15, 2021), *report and recommendation adopted*, No. CV-19-23-BU-BMM, 2022 WL 225518 (D. Mont. Jan. 26, 2022) (Morris, C.J.) ("If no claim is submitted to the insurer, the UTPA does not apply."), *vacated and remanded on other grounds,* 73 F.4th 757 (9th Cir. 2023); *Brodowy v. Progressive Direct Ins. Co.*, No. CV 22-30-H-KLD, 2023 WL 5670003, at *4 (D. Mont. Sept. 1, 2023) ("[t]his Court has previously held that the duties imposed on a liability insurer under 33-18-201 of the UTPA… are triggered when a claim is made.  If no claim is submitted to the insurer, the UTPA does not apply.") (internal citations omitted).  Plaintiff's claim is further time-barred under the two (2) year statute of limitations governing UTPA claims.  Mont. Code Ann. § 33-18-242(8)(a).

## BACKGROUND

Robert King did not submit a claim for benefits until 2016. As Plaintiff admits, his claim at that time was for Home and Community Care Benefits, seeking reimbursement for care allegedly provided by A-Plus Homecare, Inc. ("A-Plus"). Deposition of Plaintiff Michelle King ("King Depo."), Exhibit C, at 101:9-105:24. Plaintiff testified that Mr. King handled his own affairs – including the claim – until just weeks before his death. King Depo., at 33:4-23; 38:11-40:1. Continental promptly determined that Mr. King's need for substantial assistance with two or more Activities of Daily Living (as defined) made him eligible for benefits. Approval Letter, Exhibit D. Continental then advised Mr. King of the information he needed to provide to receive payment. *Id*., King Depo., at 95:24 – 99:11. For months, Mr. King (and later, Plaintiff) failed to provide any of the documents Continental requested. King Depo., at 111:7-113:23, 114:15-117:11, 117:21-118:4. Plaintiff was pursuing reimbursement of costs for care she was providing – even though she was already being paid by Medicare (as she confirmed) – and she was misleading Continental by concealing that she was the one providing care. *Id.* at 102:1-25, 129:8-132:12. Once Continental uncovered what was happening, it paid available benefits under the Rider. *Id.*, Dkt. 3 at ¶¶ 65-67. Indeed, the Rider is an *alternate* to reimbursement, it is not the primary benefit under the Policy. Mr. King died just days after Plaintiff admitted the truth.

Misunderstanding the Policy and Rider, as Plaintiff admits she does, Plaintiff then asked for retroactive payments to be made five (5) years prior to the submission of the claim. King Depo., at 127:19-128:24, 129:22-130:11, 135:9-136:3. Plaintiff further admits she did not provide complete records to Continental. *Id.* at 142:23. Despite Plaintiff's attempts to confuse the Court in her Motion, Continental has always maintained that (i) it paid the claim pursuant to the terms of the Policy; (ii) there was no misapplication of the Policy or Rider; and (iii) Plaintiff did not submit sufficient documentation or evidence to Continental after the claim was made for Continental to retroactively pay benefits. Dkt. 11.

Plaintiff has had four (4) years to pursue discovery. Continental has acquiesced to Plaintiff's excessive requests, producing over 3,500 documents, including personnel files for a dozen individuals and eight witnesses for deposition. Plaintiff is dissatisfied because she lacks evidence to prove her claims. On October 26, 2024, Plaintiff issued for the first time a written request for the claim files of other insureds where Continental *paid* the claim(s) under a similar rider ("Request 31").[3] Continental timely responded and lodged appropriate objections. Plaintiff now seeks to compel responses not only to Request 31, but also Requests for Production Nos. 8, 29, and 30, which have been in Plaintiff's possession for 13 and

---

[3]     When Ms. Belknap was deposed, Plaintiff had not yet issued any request for the "111 Claim Files," and so Ms. Belknap was understandably not prepared to discuss the yet-to-be-made request. Her testimony, and counsel's objection, were appropriate at the time.

7 months respectively. As set forth herein, there are many independent reasons why Plaintiff's Motion should be denied.

## LEGAL STANDARD

Pursuant to Rule 37, "[a] motion to compel may be filed when a party disagrees with the objections raised by the other party and wants to compel more complete answers." *Smith et al. v. BNSF Railway Corp.*, No. CV-23-82-GF-BMM, 2024 WL 4958182, at *1 (D. Mont. 2024) (citing *Nei v. Travelers Prop. Cas. Co. of Am.*, 326 F.R.D. 652, 656 (D. Mont. 2018)). The burden is first on the requesting party to "establish[] that a discovery request seeks relevant information." *Id.* Only after that initial showing, "the party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.* (quoting *Schulz v. Mt. West Farm Bureau Mut. Ins. Co.*, No. CV 20-88-M-DLC, 2021 WL 322725 (D. Mont. Feb. 1, 2021)).

## LEGAL ARGUMENT

**A.    Request No. 8 – All Electronically-Stored Documents Containing the Words "Alternate Payment Benefit Rider," or "Alternative Payment Benefit Rider."**

**1.    "Electronically-stored documents" simply containing the words "Alternate Payment Benefit Rider" are not Relevant Here.**

Plaintiff dishonestly recites a history of discovery that ignores Continental's timely responses, reneges on agreements reached at "meet and confers" between counsel, and disregards witness testimony. Request No. 8 is overbroad, asking for

<u>any</u> electronically stored document containing the words "Alternate Payment Benefit Rider" without limitation.  Continental's objection included citations to applicable Montana law.  *See* Objections and Responses dated December 11, 2023 at pp. 4-6, attached as Exhibit E.

At a meet and confer, Plaintiff agreed to narrow the Request, to which Continental also responded.  *See* Supplemental Responses, May 16, 2024, attached as Exhibit F.  Continental performed a diligent search and determined that no responsive documents exist based on its search capabilities.  *See* Deposition Transcript of Julie Belknap ("Belknap Depo."), Exhibit G, at 10:25 – 13:4, 17:25-18:25; Affidavit of Julie Belknap ("Belknap Aff."), Exhibit H.

On September 11, 2024, Plaintiff deposed Continental's 30(b)(6) witness, Julie Belknap.  Ms. Belknap testified accurately regarding the search performed by Continental, specifically that it made electronic searches, but that it did not run manual searches through each claim file, as that would be unduly burdensome.  Belknap Depo. at 23:16-23, 26:3-25, 28:7-29:13.  Ms. Belknap further confirmed that when documents are imaged and not word searchable, a Company employee would need to open and review each file individually, page by page. Belknap Depo. at 13:15 – 16:19; Belknap Aff.

"OnBase" is for document management – it is not a discovery search platform. Belknap Depo., 12:3-15.  Plaintiff complains (without support) that Continental's

search was not "diligent," and wants this Court to compel Continental to purchase a new version of OnBase that purportedly allows cross-file word searching. Continental's ability to document its claims has nothing to do with whether it can run cross-file word searches of claim files for Plaintiff. Specifically, Plaintiff complains that Continental did not produce "over 6,000" copies of the "Rider" but ignores that these cannot be produced without manual search. Motion at 6. Plaintiff also complains that claim files of other insureds, where Continental paid under a similar rider, were not produced (hereinafter the "111 Claim Files").

Plaintiff cannot satisfy her burden to establish relevance and she is unable to cite to any law that helps her. Doing the "same thing" to others means <u>paying claims</u> pursuant to the terms of the Policies. Plaintiff fails to show any relevance 6,000 copies of a rider attached to other policies might have here. Plaintiff's citation to *Micron Tech. Inc. v. Factory Mut. Ins. Co.*, *infra*, and *Pac. Hide & Fur*, *infra*, misses this threshold requirement. Plaintiff also ignores that the only documents likely to include the term "Alternate Payment Benefit Rider" would be copies of the policy/rider, not the entire claim file.

### 2. Continental's Other Objections are Proper.

Continental also objected to Request No. 8 as Unduly Burdensome, Disproportionate, and Privileged. The 2015 Amendment to Rule 26(b)(1) limits the scope of discovery to relevant materials that are "proportional to the needs of the

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While a party claiming "undue burden or expense" has the best information, "[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them," after which it is "[t]he court's responsibility, using all the information provided by the parties, [] to consider these and all other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26, Committee Notes.

This Court gives serious weight to the burden imposed upon insurers in producing the claim files of insureds not directly involved in the litigation. *See Micron; Pacific Hide; infra*, *see also Nowak v. Lexington Ins. Co.*, No. 06-20530-CIV, 2006 WL 3613764 (S.D. Fla. Oct. 31, 2006) (limiting discovery to first party property claims made in Florida to ensure compliance was not overly burdensome in light of defendant's need to manually review each responsive file). Other district courts recognize that discovery "of past bad faith conduct in single-plaintiff bad faith lawsuit" must be "subjected [] to 'careful tailoring to avoid placing an undue burden

on the [insurer].'" *See e.g.*, *Garber v. Nationwide Mut. Ins. Co.*, No. 5:21-CV-00546-HNJ, 2022 WL 1420916 (N.D. Ala. Mar. 24, 2022).

Here, the burden on Continental to produce claim files of other insureds is disproportionate to the needs of this case. Despite Plaintiff's assertion otherwise, claim files are not able to be produced at the click of a button. Belknap Aff. Beyond the manual work needed to prepare each file, counsel would need to review and redact each file for Protected Health Information (PHI) (as addressed later herein). Each claim file could be between hundreds and thousands of pages, depending on the age, length, and history. The files cannot be produced piece-meal, as long-term care insurance claims are wholly dependent on the PHI. It could take outside counsel the better part of a year to prepare these files for production.[4] In *Micron*, the Court "modifie[d] its prior order by (1) limiting the scope of the required production to documents that involve the interpretation or application of policy language" specifically to address the "burdens on [the insurer]." *Micron*, *infra*, *5. As discovery in this matter is otherwise complete, requiring production of these files will needlessly hold up the entire litigation.

---

[4]       Although Plaintiff says Continental should just turn these files over to Plaintiff without review, they ignore that doing so is wholly unreasonable and deprives Continental of the opportunity to have counsel review what it has produced, as is appropriate in litigation. Plaintiff gives no reason as to why Continental should be subject to undue prejudice.

**B.**    **Request Nos. 29 and 30**

Plaintiff also disingenuously "summarizes" Request Nos. 29 and 30 to tell this Court an inflammatory (and untrue) story.  Plaintiff claims that "Requests 29-30 seek word searches of claim files where (1) the Rider is present; (2) a claim was either paid or denied; and (3) the claim file or claim notes contain the word family," *see* Motion at 9, but excludes the limiting language that Plaintiff added:

> The scope of this Request is limited to electronically searchable claim files or those portions of claim files. Further, this Request does NOT require Defendants to produce Policy forms containing the word "family." Therefore, if the only document in a claim file containing the word "family" is a policy form, it need not be identified or produced.

*See* Request and Responses Nos. 29 and 30, Exhibit I.  Continental responded that after electronic search, there were no responsive documents.  *See Id.*  Plaintiff now complains that Continental's response "is false," and implies that Continental was dishonest when Ms. Belknap purportedly "admit[ted] Defendants never even tried to run this search," both of which are untrue.  Continental's responses are correct. Ms. Belknap testified that Continental "did not search <u>individual claim files</u> for the word 'family,'" which confirms the veracity of Continental's written response that it searched "electronically searchable" files.

This Court already ruled that "[t]he Rider remains silent both as to the type of care provided and as to who must provide the care." Dkt. 82 at 10-11.  Continental's payment under the Rider had nothing to do with "family" or the person providing

17

care. Thus, the word "family" in a claim file has nothing to do with paying a claim under the Rider; the Rider pays the indemnity benefit when there is no reimbursable care. Mr. King's claim file only contains the term "family" in the Policy itself, and nowhere else. *See* CGIC_000069-B, attached as Exhibit J.

Finally, Request No. 29 seeks documents containing the word "family" in files where the claim was *denied*, and the Policy contained a similar rider. Plaintiff concedes that Mr. King's claim was approved, so files for denied claims have no relevance either. Further, there would be no claim "denied" under a Rider. A claim could be denied for other reasons (*i.e.*, the insured is not Chronically Ill).

## C.    **The 111 Claim Files ("Request 31")**

At the request of Plaintiff, Continental determined that it paid 111 claims using a similar rider. These are claims paid (i) based on health information of each insured; (ii) using specific information related to each insured's care arrangements; and (iii) without complaint or litigation. Continental made detailed objections to Request 31, again with citation to applicable Montana law. *See* Objections and Responses ("Response 31"), Exhibit K.

### 1.    **There is No Support for Production of the 111 Claim Files.**

Plaintiff cannot cite to any case – from Montana or otherwise - to support her demand that the claim files of other long-term care insureds be produced. Fed. R.

Civ. P. 26(b)(1).[5]  With respect to punitive damages, "[t]o justify punishment based upon recidivism, courts must ensure the conduct in question replicates the prior transgressions." *State Farm Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2007); *see also Seltzer v. Morton*, 154 P.3d 561 (Mt. 2007) (instructing jury to consider evidence of "similar acts" in evaluating "the likelihood of recidivism").  But as the Supreme Court in *Campbell* held, "[c]onduct must have a nexus to the specific harm suffered by the plaintiff."  *Campbell*, *supra* at 522.  This requirement is also reflected in *Phillip Morris* and its progeny, which caution courts to "protect against [the] risk" that a jury will mistakenly "inflict[] punishment for harm caused strangers to the litigation." *Phillip Morris USA v. Williams*, 549 U.S. 346 (2007).[6]

This Court has held that "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis a vis* the insured," rendering them "distinguishable" even from similar cases.  *Nei*, *supra* at 656.  In *Nei*, the plaintiff also sought "complete copies" of third-party insureds' claim files, *who brought a similar lawsuit. Id.* at 659, 662.  This Court ultimately denied the plaintiff's motion to compel any of the requested discovery as "irrelevant" because he failed to "show a nexus with the

---

[5]    Plaintiff's argument that discovery is broader than admissibility is another side of the same coin –to be discoverable, evidence must first also be relevant.  *Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931 (D. Nev. July 25, 2017) ("[T]he requested discovery must first be relevant and proportional to the needs of the case."); *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343 (N.D. Ill. 2005) (discovery may only seek "information that concerns or relates to the allegations, claims or defenses in the case").

[6]    Although Plaintiff relies upon *Phillip Morris*, she ignores that *Phillip Morris* involved wrongful death accusations due to cigarette smoke, with facts so different than this case, they are not even in the same stratosphere.

issues in this case or that 'the defendant's conduct in other cases' was 'sufficiently similar to the conduct in the instant case.'" *Id.  Nei* is instructive here.

Plaintiff advances a hollow argument that the 111 Claim Files are "relevant to show Defendants' misrepresentations were not an isolated instance, but part of a company practice." But Plaintiff fails to answer the threshold question: relevant to show a company practice of *what*?[7]  There is no evidence of company practice here nor has Plaintiff demonstrated how other claims are "similar" to this case.

Just as in *Nei*, the facts of this case – and all long-term care claims - are unique. *See* Response 31 at 6.  There is also no evidence that the 2013 Call prevented Mr. King from filing a claim when he needed benefits; if he truly believed the "policy would not pay," as Plaintiff argues, why would he keep paying premium or submit a claim in 2016?  Why would he not ask additional questions of Continental?  Plaintiff cannot identify any specific "company practice" that purportedly harmed Mr. King, nor has she shown a "nexus" to the 111 Claim Files to make them relevant.

### A.    Mr. King is the only Montana insured to Receive Payment Under the Rider.

---

[7]    Throughout the Motion, Plaintiff argues they are entitled to the 111 Claim Files to determine "how Defendants applied the Rider," to learn "if Defendants routinely <u>did this</u> to policyholders," to determine "if Defendant did <u>not do the same thing to anyone else</u>," and other vague accusations hinting at wrongdoing, but not actually proving any indication of what the alleged wrongdoing is.  But the February 2013 Call is the only action or omission identified by Plaintiff as the basis for the UTPA cause of action (which, as addressed above, fails as the basis of a UTPA claim because it (i) does not contain any misrepresentation; (ii) is time-barred by the statute of limitations; and (iii) occurred prior to the submission of Mr. King's claim and therefore prior to the trigger of the UTPA obligations.  Plaintiff also admits that "[m]ost likely, the [111 Claim Files] involve assistance unrelated to family care," eliminating any relevance to the February 2013 Call.  *Id.*  At bottom, Plaintiff fails to identify any *evidence in the record* establishing a misrepresentation or other wrongful act under the UTPA, and without that initial showing, there can be no "company practice" to investigate.

Plaintiff cannot look outside of Montana to review claim files of other insureds. As this Court correctly identified, the District of Montana follows the limitations set forth in *Campbell*, *supra*, that "evidence of a defendant's conduct in other cases may be relevant and admissible if it is evidence of conduct that is (1) unlawful in the jurisdiction in which it was committed, and (2) sufficiently similar to the conduct in the instant case," <u>but</u> the discovery is only relevant "to the extent the requests are limited to information to claims made and actions filed in Montana – the forum state." *Moe v. System Transport, Inc.*, 270 F.R.D. 613, 620 (D. Mont. 2010) (citing *Campbell*). The *Nei* court held that "general requests for information unrelated to [an insurer's] activities in Montana at or around the time of [the plaintiff's] claim [were] irrelevant and disproportionate" to the needs of a single claimant case. *Nei*, *supra*, at 656.

Continental already confirmed "none of the 111 insureds reside in Montana other than Mr. King." *See* Response 31 at 6. Plaintiff's theory that a "misrepresentation of an insured's eligibility for benefits is illegal everywhere," ignores the "specific harm" requirement imposed by *Campbell* and the limitation to the forum state set forth in *Moe*.[8]

## B.    Request 31 is Not Properly Limited.

---

[8]    To that end, Plaintiff has offered no evidence to support her own claim that Mr. King's call was misinterpreted; rather, Mr. King's handwritten notes and own course of conduct demonstrate that Mr. King correctly understood he could not receive benefits until he was Chronically Ill, and, only at that point in time, would he become eligible for the Wavier of Premium or any other benefit under the Policy. *See* King Handwritten Notes, attached as Exhibit L.

Plaintiff made no effort to limit Request 31, but even if she did, documents should still be withheld. Courts within the Ninth Circuit have held that a request for claim files of others must also be "properly limited to the facts, insurance policy, and claims at issue in th[e] case" to avoid "a significant number of claims that are irrelevant to the facts underlying [the lawsuit]." *Dobro v. Allstate Ins. Co.*, No. 16CV1197-AJB (BLM), 2016 WL 4595149 (S.D. Cal. Sept. 2, 2016) (denying motion to compel other insureds' claim files where request was not properly limited and therefore "not proportional to the needs of this case"); *see also Enciso v. Jackson Nat'l Life Ins. Co.*, No. CV 21-9205-DMG (PVCx), 2023 WL 9687512 (C.D. Cal. Nov. 30, 2023) (finding "the pattern and practice discovery as propounded is overbroad" and "limiting the [] discovery to the claims made in this case").

These limitations are also addressed by *Micron Tech., Inc. v. Factory Mutual* and *Pacific Hide & Fur, infra*, the holdings of which Plaintiff has misrepresented to this Court. In *Micron*, the court significantly narrowed its opinion on reconsideration. Initially, the *Micron* court compelled the insurance company to produce "claims made by other insureds involving losses under the same or similar policy language to that governing Micron's claimed loss" on the basis that "[c]laims data involving other insureds may be relevant to an insurer's application of policy language." *Micron Tech., Inc. v. Factory Mut. Ins. Co.*, No. 3:18-cv-07689-LB, 2022 WL 1687154, at *1, 4 (N.D. Cal. 2022). The court found Micron established

relevance by citing to "evidence that [the insurer] relied on similar strategies to handle Micron's claim and a separate claim by Intel," as well as "an excerpt from [the adjuster's] deposition" where he testified he had adjusted "other claims… involving safety interlocks (the type of equipment involved in the subject claim)." Id. at *3-4.

But on reconsideration, the *Micron* court entered an order "limiting the scope of the production" to only those portions of the claim files "that involve[d] the interpretation or application of policy language." *Id*. In doing so, the court acknowledged that when "order[ing] the production of other insureds' claims files, courts have closely limited the scope of the production," often only to those "non-privileged documents from claim files that involve an express contract or similarly worded exclusion." *Id*. at *2. The court also recognized "the 2015 amendments to Rule 26 changed the rule to emphasize proportionality such that it was no longer 'good enough to hope that the information sought might lead to the discovery of admissible evidence,'" but determined that Micron "ha[d] done more than merely speculate that the information in the claim files may be relevant" by citing to specific deposition testimony establishing that factually similar claims existed. *Id*. at *3. Plaintiff has not done what is required by *Micron*, she has provided only "mere speculation" of relevance.

Likewise, this Court in *Pacific Hide & Fur*, *infra*, limited production to only 10 to 20 claim files that "contain[ed] either the pollution or owned property exclusions" and found them "relevant because if [the insurer] did not interpret these exclusions in a consistent manner, this would open the door to the question of whether the terms are clear and unambiguous." *Pac. Hide & Fur Dept v. Great Am. Ins. Co.*, No. CV-12-36-BU-DLC, 2013 WL 11029340, at *1 (D. Mont. 2013). [9] To be relevant, a file had to satisfy "four criteria," importantly that the claims arose under the same or a substantially similar state law dispute and the policy contained an identical exclusion as plaintiff's claim. *Id.*; *see also Enciso*, *supra*, at *8. The Court allowed this "*limited sample* of other claims similar to [p]laintiff's claims," as opposed to "all claims of other insureds from 1956 to 1978" as requested, which was a "balanced approach" and for the purposes of "lightening [the insurer's] burden." *Id.* at *4.

Plaintiff's Request, lacking limitation, is distinguishable from *Micron* and *Pacific Hide*, both explicitly disallowing totally unfettered access to an entire universe of other insureds' claim files. Plaintiff does not cite to any specific criteria to identify factually similar claims adjudicated under identical policy language to her own. She also cannot cite to any other cases where, like here, the insured

---

[9]     Notably, *Pacific Hide* placed these limitations on the production in 2013, three years prior to the 2016 proportionality amendments to Rule 26 referenced by the *Micron* court as its basis for narrowing its original order to compel.

misrepresented the caregiver and the care being provided to try to get reimbursement, and then it was later revealed that his daughter was allegedly providing care. *See* King depo., generally. Only then, assuming a similar claim exists (which the record suggests it does not),[10] could even limited portions of the claim file be responsive.

Knowing that there is not any evidence to establish relevance, Plaintiff misrepresents that Continental "admitted that they applied [the family exclusion] to the Rider" in its answer and pre-trial statement filed in this lawsuit, but then "[a]fter the Court's [summary judgment] ruling, Defendants changed stories" to "deny applying a family member exclusion to the Rider."[11] This is again untrue. The record is clear that Continental explained to Plaintiff many times why it paid Mr. King's claim under the Rider, including that Plaintiff – who was both related to and lived with Mr. King – could not provide *reimbursable* care under the Home and Community Care Benefit of the Policy. *See* Exhibit J. Continental did not "change stories" regarding the applicability of any family caregiver exclusion to the Rider

---

[10]      And, if other similar claims exist, then only a sample of the total claims should be subject to production.

[11]      Plaintiff's Motion relies heavily on a feigned ignorance as to the distinction between (i) the base Policy and the Rider; and (ii) reimbursement benefits vs. indemnity benefits. *See*, *e.g.*, Motion at 15 (arguing that Continental's statement "the **Policy** specifically excludes **reimbursement** for care provided to an insured by a family member" is somehow contradicted by its indemnity payments under the Rider that do not require an insured to receive care at all, much less from any specific caregiver).

after this Court issued its summary judgment ruling. Regardless, such a baseless theory cannot open the door to irrelevant "company practice" discovery.

> **c.    Plaintiff ignores this Court's obligation – separate and apart from HIPAA – to protect the privacy of other insureds by limiting discovery to only relevant information.**

Plaintiff wants Continental to produce the files of other insureds, without review or redaction, ignoring that this Court and its brethren routinely express serious concerns regarding other insureds' privacy rights.  And those concerns involve *property and casualty claims* that have nothing to do with PHI in *health-related claims*. Again, long-term care insurance claims are adjudicated based on PHI and medical information, so the Court's concern to release them should be heightened ten-fold.  Plaintiff does not cite to a single case where the court allowed the production of PHI or medical records of other insureds unless the information was directly related to the case.  And even then, the records were permitted to be reviewed and redacted every time.

In *Moe*, *supra*, this Court ordered the defendant to "redact any irrelevant sensitive personal or private identifying information contained in any documents" responsive to the requests prior to production, acknowledging that claim files "may contain irrelevant, sensitive personal information such as home addresses or social security numbers" or other "financial and personal information concerning individuals who are not parties to this action" that "could potentially subject non-

parties to identity theft or other harm." *Moe* at 621; *see also Pacific Hide*, *supra*, at *4 (ordering insurer to "redact all confidential information from its claim files, including the names of its insureds"); *Micron*, *supra*, at **1, 5 (altering prior order to "provid[e] the non-party insureds fourteen days to review their documents before production" out of recognition for [] privacy concerns [].").

These holdings reflect a consistent recognition within the Ninth Circuit that "good cause" exists to keep "confidential" the "type of information [that] is commonly safeguarded to protect the privacy interests of those individuals mentioned in such documents," as well as prevent "harassment, embarrassment, annoyance, identity theft, and other harm." *Bromgard v. Montana*, No. CV-05-32-BLG-RFC-CSO, 2007 WL 2710379 (D. Mont. Sept. 13, 2007) (citing *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).

Plaintiff waives these concerns away, improperly stating that HIPAA allows for unlimited production. But Plaintiff ignores the recognition of a right to privacy in the sensitive materials as set forth in *Micron* and *Pacific Hide*. Case law instructs this Court to protect the privacy of the insureds whose PHI is stored within the 111 Claim Files. Even production of only those records that relate to the interpretation of the relevant contractual provisions is difficult in a long-term care insurance claim where the PHI is directly tied to the claim decision. In other words, it is nearly impossible to parse out the claim from the PHI.

Plaintiff also fails to cite any case that allows for production of unredacted medical records of non-parties to a single plaintiff in a civil lawsuit. Instead, the Motion only contains citations to cases that (i) permit a covered entity to produce a *plaintiff's own* medical records,[12] (ii) lawsuits that involved the health records of others as a *prima facie* component of the claim;[13] (iii) govern discoverability of criminal investigative materials;[14] and/or (iv) or do not relate to the disclosure of information protected by HIPAA.[15]

Plaintiff misunderstands HIPAA. While HIPAA allows for the production of medical records in response to a written discovery request, the covered entity cannot make a responsive production until it (A) "receives satisfactory assurance… from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request" or (B)

---

[12]     *See Clark v. Tessema.*, No. RWT-10-848, 2011 WL 337344 (D. Md. Jan. 31, 2011) (holding defendant's use of plaintiff's own medical records in support of its summary judgment motion did not violate HIPAA).

[13]     *Ruggles v. WellPoint, Inc.*, 2010 WL 11570681 (N.D.N.Y. Dec. 28, 2010); *U.S. v. W.R. Grace*, 401 F.Supp.2d 1093 (D. Mont. 2005) (granting access to medical records of the Libby, Montana residents whose medical conditions constituted the entire basis of the criminal indictment to ensure constitutional due process was satisfied but still permitting the redactions of names and other sensitive information of the residents).

[14]     *See United States v. Cudd*, 534 F. Supp. 3d 48 (D.D.C. 2021) (granting protective order limiting the use, dissemination, and reproduction of sensitive material gathered by government in its investigation of January 6, 2021 riot); *see also U.S. v. Luchko*, No. CRIM.A. 06–319, 2007 WL 1651139 (E.D. Pa. 2007); *U.S. v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013).

[15]     *Lyms, Inc. v. Millimaki*, No. 08-CV-1210-GPC-NLS, 2010 WL 11508870 (S.D. Cal. Feb. 18, 2010) (addressing discoverability of documents relating to the administration of an employer's health plan in breach of fiduciary duty claim brought under ERISA); *One Source Env't, LLC v. M + W Zander, Inc.*, No. 2:12–cv–145, 2015 WL 4663851 (D. Vt. Aug. 6, 2015) (regarding discovery that did not medical or other personal information of third-party individuals).

"receives satisfactory assurance… that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements [of the regulation]." 45 C.F.R. 164.512(e)(1)(ii)(A)-(B). A "qualified protective order" "prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding." 45 C.F.R 164.512(e)(v). But, even then, a protective order does not excuse the "minimum necessary" standard, requiring that "[w]hen using or disclosing protected health information" a covered entity "must make reasonable efforts to limit protected health information to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 45 C.F.R. 164.502(b).[16]

Plaintiff also improperly references Section 164.512(e) of HIPAA, which does not apply when the covered entity is a party to the lawsuit; rather, "a covered entity may disclose health records to defend itself in litigation as part of 'health care operations,' [but] it must 'make reasonable efforts to limit [disclosure of] protected health information to the minimum necessary." *McDowell v. United States*, No.

---

[16] Plaintiff's attempt to have the Court alter the existing Protective Order that does not contemplate the PHI of third parties does not change this; a new and specific protective order would need to be entered.

EDCV19631JGBSPX, 2019 WL 8750360 at *1 (C.D. Cal. Dec. 11, 2019) (citing 45 C.F.R. § 164.501).

Regardless of the relevancy or reasonableness of the request (of which there is neither), Continental cannot produce the PHI of other insureds without HIPAA compliance. But more significantly, Plaintiff's suggestion that this Court can simply enter a protective order and "negate[] the need to redact health information before producing the records" is incorrect. The plain language of HIPAA makes clear that covered entities may not engage in the type of unmitigated dump of PHI that Plaintiff seeks. To the contrary, Plaintiff's entitled approach demonstrates the need for the heightened protections imposed by HIPAA.

## CONCLUSION

For all of the reasons set forth herein, Defendants respectfully request that Plaintiff's Motion to Compel be denied.

DATED this 3rd day of January, 2025.

FAEGRE DRINKER BIDDLE & REATH LLP
DAVIS HATLEY HAFFEMAN & TIGHE, P.C.

BY /s/ *Maxon R. Davis*
    Maxon R. Davis

*Attorneys for Defendants Continental General Insurance Company, United Teacher Associates Insurance Company, and Continental LTC, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I, Sandra K. Jones, hereby certify that the foregoing Response in Opposition of United Teacher Associates, Inc., Continental LTC, Inc., and Continental General Insurance Company to Plaintiff's Motion to Compel is in compliance with L.R.(d)(2) and contains 6,269 words exclusive of the caption, and certificates of service and compliance.

/s/ *Sandra K. Jones*
Sandra K. Jones

## **CERTIFICATE OF SERVICE**

I, Maxon R. Davis, hereby certify that on the 3rd day of January, 2025, I caused the foregoing Response in Opposition of Great American Life Insurance Company n/k/a MassMutual Ascend Life Insurance Company to Plaintiff's Motion to Compel to be filed using the Court's CM/ECF system and thereby served upon all counsel of record.

/s/ *Maxon R. Davis*
Maxon R. Davis