# EXHIBIT G

UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
GREAT FALLS DIVISION

_____

MICHELLE KING, as the Personal          Cause No. CV 23-47-BLG-SPW
Representative of the Estate of
ROBERT GLENN KING,

        Plaintiff,

   vs.

UNITED TEACHER ASSOCIATES
INSURANCE COMPANY,
CONTINENTAL GENERAL
INSURANCE COMPANY, GREAT
AMERICAN LIFE INSURANCE
COMPANY, CONTINENTAL LTC,
INC., fka CONTINENTAL
INSURANCE, INC., and DOES 1-V,

        Defendants.

_____

VIDEOTAPED 30(B)(6) DEPOSITION OF
CONTINENTAL GENERAL INSURANCE COMPANY

JULIE BELKNAP

Taken from:

Nordhagen Court Reporting
1734 Harrison Avenue
Butte, Montana
September 11, 2024
8:00 a.m.

```
 1   APPEARANCES OF COUNSEL (via Zoom):

 2

 3   FOR THE PLAINTIFF:

 4         MICHAEL C. ABOUREZK

 5         Attorney at Law

 6         ABOUREZK LAW FIRM

 7         220 West Omaha

 8         Rapid City, South Dakota  57709-9460

 9         mike@abourezk.com

10

11

12         DANIEL B. BIDEGARAY

13         Attorney at Law

14         BIDEGARAY LAW FIRM, LLC

15         1700 West Koch Street, Suite 5

16         Bozeman, Montana  59715

17

18

19

20

21

22

23

24

25
```

Page 2

```
1   APPEARANCES OF COUNSEL (via Zoom)(Continued):

2

3   FOR THE DEFENDANTS:

4         MAXON R. DAVIS

5         DEVON M. CONROY

6         Attorneys at Law

7         DAVIS, HATLEY, HAFFEMAN & TIGHE, PC

8         The Milwaukee Station, Third Floor

9         P.O. Box 2103

10        Great Falls, Montana  59403-2103

11        max.davis@dhhtlaw.com

12        devon.conroy@dhhtlaw.com

13

14

15  FOR THE DEFENDANTS UNITED TEACHER ASSOCIATES INSURANCE

16  COMPANY, CONTINENTAL GENERAL INSURANCE COMPANY,

17  CONTINENTAL LTC, INC.:

18        SANDRA K. JONES

19        JESSICA LOESING GALLAGHER

20        Attorneys at Law

21        FAEGRE DRINKER BIDDLE & REATH, LLP

22        One Logan Square, Suite 2000

23        Philadelphia, Pennsylvania  19103

24        sandra.jones@faegredrinker.com

25        jessica.gallagher@faegredrinker.com
```

```
 1   APPEARANCES OF COUNSEL (via Zoom)(Continued):

 2

 3   FOR THE DEFENDANT GREAT AMERICAN LIFE INSURANCE

 4   COMPANY:

 5        NICOLE C. WIXTED

 6        Attorney at Law

 7        FAEGRE DRINKER BIDDLE & REATH, LLP

 8        One Logan Square, Suite 2000

 9        Philadelphia, Pennsylvania  19103

10        nicole.wixted@faegredrinker.com

11

12

13

14

15

16

17

18   Also Present:

19        Josy McLean, Bidegaray Law Firm

20

21        John Nordhagen, Videographer

22        Nordhagen Court Reporting

23

24

25
```

```
 1                    I N D E X

 2   Witness:                                Page:

 3        JULIE BELKNAP

 4             Examination by Mr. Abourazek  .  .  .  9

 5

 6

 7

 8

 9                  E X H I B I T S

10   NO. PAGE      DESCRIPTION

11   A    16       Defendants' Objections/Responses

12                 To Plaintiffs' First and Second Set of

13                 Requests For Production of Documents

14

15

16

17

18

19

20

21

22

23

24

25
```

                                           Page 5

1              VIDEOTAPED 30(B)(6) DEPOSITION OF CGIC

2                          JULIE BELKNAP

3                  WEDNESDAY, SEPTEMBER 11, 2024

4                            - - -

5         BE IT REMEMBERED THAT, pursuant to Notice, the

6    Videotaped 30(b)(6) Deposition of Continental General

7    Insurance Company, Julie Belknap, was taken at the

8    time and place and with the appearances of counsel

9    hereinbefore noted before Candice L. Nordhagen, Court

10   Reporter - Notary Public for the State of Montana.

11        It was further stipulated and agreed by and

12   between counsel for the respective parties that this

13   deposition was taken pursuant to the Federal Rules of

14   Civil Procedure.

15

16   The following proceedings were had:

17

18             VIDEOGRAPHER:  The time is 8:01 a.m.  We

19   are on the record.

20             This is the Videoconference,

21   Video-Recorded 30(b)(6) CGIC Deposition of Julie

22   Belknap, taken by the attorneys for the Plaintiff, in

23   the matter of Michelle King, as the Personal

24   Representative of the Estate of Robert Glenn King,

25   Plaintiff v. United Teacher Associates Insurance

1    Company, et al., Defendants.

2            This is Cause No. CV-21-87-BMM, in the

3    United States District Court, District of Montana,

4    Great Falls Division.

5            This deposition is being taken on Friday,

6    the 13th day of September - I think that date's wrong

7    - the 11th day of September, 2024, from Nordhagen

8    Court Reporting, 1734 Harrison Avenue, in Butte,

9    Montana.

10           The videographer is John Nordhagen.

11           The court reporter is Candi Nordhagen.

12           Counsel will now introduce themselves, and

13   those off camera, after which the court reporter will

14   swear in the witness.

15           MR. DAVIS:  Dan and Mike, you guys go

16   first.

17           MR. ABOUREZK:  Mike Abourezk for the

18   Plaintiff Michelle King.

19           MS. JONES:  Oh, Dan, you're on mute, I

20   believe.

21           MR. BIDEGARAY:  Sorry, yeah.  And Dan

22   Bidegaray, with Mike Abourezk, for Michelle King.

23           MS. JONES:  I am Sandra Jones, from Faegre

24   Drinker Biddle & Reath.  I am on behalf of, I'm going

25   to call them the "Continental Insurance defendants,"

1   but Continental General Insurance Company; Continental

2   LTC, INC.; and United Teacher Associates.

3           My co-counsel is Jessica Gallagher, who's

4   here for observational purposes.

5           I also have my Montana counsel, who can

6   introduce themselves momentarily.

7           MR. DAVIS:  Nicole, you go next.

8           MS. WIXTED:  Nicole Wixted, also from

9   Faegre Drinker Biddle & Reath, on behalf of one of the

10  other defendants, Great American Life Insurance

11  Company, now known as MassMutual Ascend Life Insurance

12  Company.

13          MR. DAVIS:  Max Davis, in Great Falls,

14  likewise for the Continental and Great American

15  Defendants.

16          MR. CONROY:  And Devon Conroy, also in

17  Great Falls, for the Continental and Great American

18  Defendants.

19

20                  JULIE BELKNAP,

21          having been called as a witness by the

22          Plaintiff, being first duly sworn, was

23          examined and testified as follows:

24

25          MR. ABOUREZK:  I've got a little issue

1    here.  Is Dan missing from the linkup right now?  Dan,

2    there you are.

3              Who is the host of this?  Who is hosting

4    this.

5              VIDEOGRAPHER:  We are, Nordhagen Court

6    Reporting.

7              MR. ABOUREZK:  Okay.  Can you switch it so

8    that I can share documents on share screen?

9              VIDEOGRAPHER:  Oh, yeah, you can.  You can

10   share.  It's open to share.

11             MR. ABOUREZK:  Oh, okay.  Thank you.

12             VIDEOGRAPHER:  You bet.

13

14                      EXAMINATION

15   BY MR. ABOUREZK:

16        Q.    Tell me your name, please.

17        A.    Julie Belknap.

18        Q.    And what's your position with Continental?

19        A.    I'm the assistant COO, and I serve as the

20   VP which leads the strategic operations team.

21        Q.    Okay.  I'm going to have a hard time

22   hearing you.  There's quite an echo going on where

23   you're at.

24        A.    Okay.

25        Q.    Do you know where the microphone's at?

1    Can you get a little closer to it in some way?

2           A.    I have a microphone right here.

3           Q.    Yeah, that way we can --

4           A.    Is this any better?

5           Q.    That, that will help.  You're in a big

6    room and there's quite an echo.

7           Have you seen the deposition notice that was

8    issued for this deposition today?

9           A.    I have.

10          Q.    And I'm going to share that with you, I

11   hope.  Do you see it?

12          A.    I see that, yes.

13          Q.    Is it big enough?  Do you recognize it?  I

14   have no idea how big it is on your screen so you need

15   to help me out a little bit.

16          A.    I can see the document.  If we need to be

17   able to see text or anything substantial in it, I

18   would need to zoom in a little bit.

19          Q.    Okay.  But you have seen what I've marked

20   here as Exhibit 1 to the 30(b)(6) deposition?

21          A.    Yes.

22          Q.    The first page, and here's the second

23   page.  You have seen this, correct?

24          A.    Correct.

25          Q.    And do you understand that pursuant to

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

1  this, the company was obligated to designate someone

2  that is knowledgeable about these two subjects that

3  are listed here so that we could take testimony and

4  ask questions?  Do you understand that?

5       A.    Yes.

6       Q.    And do you understand that the questions

7  and answers -- or the answers you're giving today are

8  on behalf of Continental Insurance Company?

9       A.    Yes.

10      Q.    Okay.  Did you do anything to familiarize

11  yourself with these two subjects that are listed?

12       The first subject is the efforts made by

13  Continental to respond to Plaintiff's interrogatories

14  and document requests, the searches conducted and the

15  results.

16       Did you do anything to familiarize yourself with

17  that subject matter?

18      A.    Yes.

19      Q.    Can you tell me what you did?

20      A.    I reviewed the interrogatories and the

21  document requests, and I spoke with my attorneys.

22      Q.    And when you say "my attorney," who is

23  that?  Who are you referring to?

24      A.    Sandy and Jessica.

25      Q.    Okay.  And are you familiar with the

Page 11

1   search capability of OnBase?

2          A.     Yes.

3          Q.     Can you tell me, what is OnBase?

4          A.     OnBase is an enterprise system that we use

5   that's essentially a document repository system so it

6   houses all of the documents associated with policies

7   or policy forms for everything that we do on our

8   systems.

9          Q.     And as I understand it, your claim file

10  system is in OnBase; is that correct?

11         A.     So our documents associated with claims

12  are in OnBase.  And then we have an administration

13  system called "LifePRO," and that's where we would

14  process any types of payments that happen as a result

15  of any claim.

16         Q.     But you have claim files, correct?  You

17  have a file that's associated each time a claim is

18  filed; is that correct?

19         A.     Correct.  And that document is within the

20  OnBase system.

21         Q.     And you can perform full-text searches in

22  the OnBase system; is that correct?

23         A.     No, we're not able to perform full

24  searches.  So every document within OnBase has a

25  specific and associated document type within it.  And

                                          Page 12

1    then within each document type, there's index values

2    for -- called "keywords."  And we can search keywords

3    and we can search the document types, but we can't

4    search any of the actual content within the document.

5        **Q.    Well, do you have some special form of**

6    **OnBase that's different from the Hyland OnBase that**

7    **they sell commercially?**

8                MS. JONES:  I'm going to object to the

9    form of the question.

10               But you can answer, Julie, if you

11   understand.

12               THE WITNESS:  I am not an OnBase Hyland

13   expert but I'm familiar with the OnBase capabilities

14   that we have to us at Continental General.

15       **Q.    (By Mr. Abourezk) And you're claiming that**

16   **the OnBase system that you have, you cannot perform**

17   **word searches --**

18               MS. JONES:  Objection to the --

19       **Q.    -- within the text of documents?**

20               MS. JONES:  I'm going to object to form.

21               Julie, you can answer.

22               MS. WIXTED:  I'm joining in that

23   objection.

24               THE WITNESS:  So I can open a document.  I

25   can search across the system for certain types of

1  documents, and then I would need to open the document
2  itself and see if that document was searchable.  Some
3  of the documents that we have are pictures,
4  essentially, of documents.  And so if I have a
5  handwritten text or a picture of a Word document, that
6  wouldn't be searchable.
7      Q.    Oh, so what you're saying is image files,
8  you can't search.  Is that what you're saying?
9      A.    Within that, OnBase has a variety of
10  document types so there could be some Word documents.
11  If I'm in that particular Word document and where I
12  have that one document pulled up, I would be able to
13  search within that one particular document but I can't
14  globally across a series of documents, globally search
15  those.
16      Say if there were ten documents, I couldn't say,
17  "Search all ten documents for a particular word."  I
18  wouldn't be able to do that.  And I cannot search
19  images because it can't do a word search on that.
20      Q.    Okay.  But what you're saying is, I'm just
21  going to break this down, when you say a "Word
22  document," you're talking about a Word document that
23  is in the program Word?
24      A.    It could be.
25      Q.    Is that what you mean?

1    A.    It could be.  So some of the documents

2   will open up as another window that could be Word if

3   it was something like that.

4    Q.    So if it's claim notes, for instance,

5   claim notes are something that are created inside the

6   company, right?  That's not an image file, correct?

7    A.    Correct.

8    MS. JONES:  Object to form.

9    Go ahead, Julie, go ahead.

10   THE WITNESS:  Correct, correct.

11   Q.    (By Mr. Abourezk) And so claim notes are

12   something that would be searchable by a word search,

13   right?

14   A.    Again, on that one, it is searchable

15   within a given policy.  So I can open up the claim

16   notes doc type and I can search within that for my one

17   policy, but I can't search across multiple policies at

18   the same time.

19   Q.    But you could search within one claim

20   file, correct?

21   A.    Yes.

22   Q.    And you could do a word search in that one

23   claim file, correct?

24   A.    Yes.

25   Q.    And so long as the document is not just an

1   image file, in other words, it's not just a picture,

2   it's a word processing document such as claim notes,

3   then you can search those, correct?

4        A.    Yes; so one policy at a time but, yes.

5        Q.    And where do you get the information that

6   it's only one policy at a time in the OnBase system?

7   Where did you get that information?

8             MS. JONES:  Object to form of the

9   question.

10            But, Julie, you can answer if you

11  understand.

12            MS. JONES:  I join in that objection.

13            THE WITNESS:  Could you repeat your

14  question again?

15       Q.    (By Mr. Abourezk) Where did you get the

16  information that you can only search one policy or one

17  claim file at a time in the OnBase system?

18       A.    I've worked with OnBase to know its

19  capabilities on that side of it.

20       Q.    Okay.  Let's look at Exhibit A.  And I'm

21  going to switch this over to Exhibit A to this

22  deposition.

23            (Document marked Deposition

24       Exhibit A displayed on the screen.)

25  BY MR. ABOUREZK:

1    Q.    Did you review this before you came to
2  testify today?
3          MS. JONES:  Mike, nothing is up on the
4  screen yet.
5    Q.    (By Mr. Abourezk) Do you have it?
6          MS. JONES:  It is now up.  It looks to be
7  a 79-page document.  So, Julie, if you want to scroll
8  through, you can ask Mike to scroll through.
9          THE WITNESS:  Can you also zoom in a
10  little bit?
11    Q.    (By Mr. Abourezk) You want to zoom in, did
12  you say?
13    A.    Yes, please.
14    Q.    (Complying.)
15    A.    That's perfect, thank you.
16    Q.    Okay.  And you recognize these because you
17  reviewed these, correct?
18    A.    Yes.
19    Q.    And is that big enough for you to read it
20  okay?
21    A.    If you could scroll just a little bit more
22  to zoom in, that would be helpful.
23    Q.    (Complying.)
24    A.    That's great, thanks.
25    Q.    Okay.  This Request 8 asks for any

1    documents on any hard drive, server, or electronic

2    storage media containing the words "Alternate Payment

3    Benefit Rider" or "Alternative Payment Benefit Rider."

4    Do you see that?

5         A.    Yes.

6         Q.    Were you involved in trying to search for

7    documents with those words?

8         A.    I am aware of the request but I don't have

9    access to be able to search that level of information.

10        Q.    Well, were you involved in the search

11   efforts?

12              MS. JONES:   Objection to form.

13        Q.    (By Mr. Abourezk) Were you involved in the

14   search efforts?

15        A.    Only in that I was aware of them.

16        Q.    Well, are you aware of whether somebody

17   tried to search for the words "Alternate Payment

18   Benefit Rider"?

19        A.    Yes.

20              MS. JONES:   Object to form.

21              But go ahead, Julie.

22              MS. WIXTED:   And I join.

23              THE WITNESS:   Yes.

24        Q.    (By Mr. Abourezk) And what happened?

25        A.    We did not have any responsive documents.

                                              Page 18

1    Q.    Are you saying that in all the claim files

2  that you have and all the claim notes, the thousands

3  of claim files, not once is it mentioned the words

4  "Alternate Payment Benefit Rider"?

5              MS. WIXTED:  Objection to form.

6              MS. JONES:  Same objection.

7              Julie, you can try and answer.

8              THE WITNESS:  Based on the information

9  that was provided, we did not have any responsive

10  documents to that request.

11    Q.    (By Mr. Abourezk) Well, did you actually

12  plug a search, a word search, into even one claim file

13  to see if it contained those words?

14              MS. JONES:  Objection.

15              MS. WIXTED:  Objection to form.

16              MS. JONES:  Julie, you can answer.

17              Although, you know, Mike, you and I

18  discussed this at length.  And I told you that we were

19  not going to search individual claim files for search

20  terms.

21              This was a search of our, if you -- you

22  and I discussed this specifically, that you were

23  looking for servers or electronic storage media; you

24  were not looking for individual claim files.  And so

25  we did not search those.  That would, that would

Page 19

1   entail us searching thousands of claims files

2   individually, and I told you that was not being done,

3   so I'm not sure where the confusion lies.

4             MR. ABOUREZK:  Well, we had later

5   conversations.  And when I said we didn't expect you

6   to search individual claim files, that was for the

7   original search.

8             Then you came out and narrowed it down and

9   said, "Well, we've identified, we have 111 files where

10  payments have been made," and we issued new requests

11  then.  And I did not limit that to -- I didn't say

12  we're not going to agree -- or we agree that you don't

13  have to look in individual claim files.

14            At any rate, I'm going to keep going with

15  the question.

16            Did you, did you -- did we get an answer

17  to this question?  I'm asking that to the court

18  reporter.

19            COURT REPORTER:  No, we did not have an

20  answer yet.

21            MR. ABOUREZK:  Okay.  Could you read the

22  question back, please?

23            (The record was read by the court reporter

24  as follows:

25            "QUESTION:  Well, did you actually plug a

1   search, a word search, into even one claim file to see

2   if it contained those words?")

3           MS. JONES:  I'm going to lodge an

4   objection to the form of that question.

5           But, Julie, you can answer.

6           MS. WIXTED:  Same objection.

7           THE WITNESS:  I did not do a particular

8   search for those specific words on a particular

9   policy.

10      Q.   (By Mr. Abourezk) Well, do you know if

11  anybody did a search for those particular words?

12      A.   I am not aware.

13      Q.   Well, did anybody even do a search for

14  those words, regardless of whether it's for one policy

15  or what it was for?  Did anybody do a search for those

16  words?

17          MS. WIXTED:  Objection to form.

18          THE WITNESS:  Yes.

19          MS. JONES:  Go ahead, Julie, you can

20  answer.

21          THE WITNESS:  Yes.

22          MR. ABOUREZK:  You talked over the top of

23  her.

24      Q.   (By Mr. Abourezk) Did somebody do a search

25  for those terms, those words?

```
 1        A.    A search was requested.
 2        Q.    I'm sorry, I don't understand you.  Did
 3   somebody do a search for the words "Alternative
 4   Payment Benefit Rider" or "Alternate Payment Benefit
 5   Rider"?  Did someone do a search for those words?
 6              MS. WIXTED:  Objection to form.
 7              THE WITNESS:  Yes.
 8        Q.    (By Mr. Abourezk) Who?  Who did the
 9   search?
10        A.    I would need to confirm with Counsel on
11   who was the actual person that performed that search.
12        Q.    So you don't know as you sit here who did
13   that search?
14              MS. WIXTED:  Objection to form.
15              THE WITNESS:  I don't know the name of the
16   person that did that search, correct.
17        Q.    (By Mr. Abourezk) Well, were you there
18   when some person did that search?
19        A.    No.
20        Q.    And so did somebody show you the search
21   results?
22              MS. JONES:  Object to the form.
23              MS. WIXTED:  Join in the objection.
24              MS. JONES:  You can answer.
25              THE WITNESS:  I didn't see the results, as
```

Page 22

1   they would have gone to our counsel.

2        Q.   (By Mr. Abourezk) I'm sorry, can you say

3   that again and try to say it plainly, please?

4        A.   I did not personally receive the results

5   of it because it was at the request of Counsel.  So

6   the results would have gone to our counsel.

7        Q.   Well, you say the results would have gone

8   to your counsel.  Who would they have gone from?  Who

9   did the search?

10            MS. WIXTED:  Objection to form.

11            MR. ABOUREZK:  And can I ask:  What's

12   wrong with the form?  I said, "Who did the search?"

13            MS. WIXTED:  She asked and answered that

14   already.  She said she would need -- she didn't know

15   the person who had done the search individually.

16        Q.   (By Mr. Abourezk) Do you know like how

17   many options there are for the people that did the

18   search?

19        Are there three or four different people that

20   might have done it or just one or two?

21        A.   It would have gone to our IT department,

22   but I don't know the specific team that would have

23   handled the request.

24        Q.   Okay.  So you didn't see any search

25   results, correct?

```
 1                 MS. WIXTED:  Objection to form.
 2         Q.    (By Mr. Abourezk) Correct?
 3         A.    Correct.
 4         Q.    And you don't know if it returned any hits
 5   or not, correct?
 6                 MS. JONES:  Object to form.  She already
 7   answered that.
 8                 Go ahead, Julie.
 9                 THE WITNESS:  Based on our response, we
10   said that there were no responsive documents.
11         Q.    (By Mr. Abourezk) Well, you know that the
12   words "Alternate Payment Benefit Rider" show up in
13   Robert King's claim file.  You know that, don't you?
14                 MS. WIXTED:  Object to the form.
15                 MS. JONES:  I'm going to object to the
16   form.
17                 But go ahead, Julie, you can answer if you
18   know.
19                 THE WITNESS:  I haven't looked at every
20   document so I can't confirm with certainty that that
21   is in there.
22         Q.    (By Mr. Abourezk) Well, if there were 111
23   claims paid under the Alternate Plan Benefit Rider, it
24   would be necessarily impossible for the word
25   "Alternate Payment Rider" to never show up in any
```

Page 24

1   **policy -- in any claim files, would it?**

2            MS. WIXTED:  Objection to form.

3            MS. JONES:  Objection to form.  Sorry,

4   Nicole.  Both of us have objected to form.

5            MS. WIXTED:  I know.

6            Do you want to -- you have a question

7   pending so I don't want to do this now.  I can wait

8   till after.  But we might be able to just agree that

9   if one of us objects, the other one -- you know, it

10   applies to all so we don't interrupt Mike's

11   questioning.

12            MS. JONES:  I would agree to that, Nicole.

13   I think it will be easier for Mike as well and the

14   court reporter.

15            MR. ABOUREZK:  Yeah, that's fine.

16            THE WITNESS:  And can you repeat the

17   question?  I'm sorry.

18            MR. ABOUREZK:  Yeah.  Would you read it

19   back, please?

20            (The record was read back by the court

21   reporter:

22            "QUESTION:  If there were claims paid

23   under the Alternate Payment Benefit Rider" --

24            COURT REPORTER:  I just lost my screen.

25            MR. ABOUREZK:  Strike that.  Strike that.

1    I'll rephrase it.

2    BY MR. ABOUREZK:

3        Q.    Are you aware, that according to your

4    answers to interrogatories, there were 111 claims that

5    were paid?

6        A.    Yes.

7        **Q.    And that's under the Alternate Payment**

8    **Benefit Rider, correct?**

9        A.    Yes.

10       **Q.    Okay.  Now, how did you find out that 111**

11   **claims are paid under the Alternate Payment Benefit**

12   **Rider?**

13              MS. WIXTED:  Objection to form.

14              THE WITNESS:  So earlier I mentioned a

15   system called "LifePRO" which is where we make our

16   payments.  So if a claim is filed, it would have a

17   record within the LifePRO administration system.  And

18   then when it's approved and we start paying benefits

19   on it, it will actually create a transaction for every

20   payment that you make.

21              And when you make that payment, you can

22   associate it with a benefit code.  And so Alternate

23   Payment Benefit is a benefit code.  So if somebody's

24   been approved and paid under that benefit, we can

25   identify it.

1    Q.    (By Mr. Abourezk) And, in fact, if we look

2    at the claim file here and look at CGIC 207, do you

3    see what I'm talking about?  Do you see an explanation

4    of benefits here?

5        A.    I do but I cannot read it.  I see the form

6    that is "Explanation of Benefits," though.

7        Q.    (Zooming in.)

8        A.    Thank you.

9        Q.    Okay.  Do you see this is CGIC 207?

10       A.    You need to zoom back in again -- there

11   you go.

12       Q.    This is part of the OnBase system?

13       A.    Yes and no.  That's an explanation of

14   benefits so it gets generated outside of OnBase, but

15   because it's a copy of a file associated with the

16   policy, an image of it gets copied into OnBase, but it

17   doesn't generate that.

18       Q.    Is this in the LifePRO system?

19       A.    LifePRO will generate the transaction and

20   the payment, or if there was a rejection, it would

21   have that as well.  That's the underlying data, but

22   then that feeds a system that would then create an

23   explanation of benefits.  The LifePRO itself also does

24   not create that.

25       Q.    If we see here, we've got a code here in

1    this document "Alt Pay Rider," correct?

2           A.      Correct.

3                   MS. JONES:  Object to the form.

4                   Sorry, Julie.

5                   Object to the form, but she answered.

6                   THE WITNESS:  Correct.

7           Q.      (By Mr. Abourezk) That's correct.  And you

8    can search the system for this code "Alt Pay Rider"

9    and it will bring up all the times when a payment was

10   made under that rider, correct?

11                  MS. WIXTED:  Objection to form.

12                  MS. JONES:  Objection to form.

13          Q.      (By Mr. Abourezk) Is that correct?

14          A.      Yes.  It's a little different.  I can't

15   actually search the word "Alt Pay Rider."  It's in a

16   code that translates to "Alt Pay Rider," but, yes.

17          Q.      Okay.  I didn't understand what you said

18   because I couldn't hear it quite well.  The code, is

19   the code "Alt Pay Rider"?

20          A.      So the "Alt Pay Rider" is the description

21   and it has a benefit code that's usually a three-digit

22   benefit -- or three-character benefit code that would

23   be in the claims system within LifePRO, some of the

24   claims table that we would be able to search.

25                  So, yes, we would be able to search it if it had

1  been paid under that.

2      Q.    So with these 111 claims, going back to

3  Exhibit A, with these hundred exhibit claims that you

4  said were paid under the Alt Pay Rider, you know the

5  names of the people that those claims were paid for,

6  correct?

7      A.    Yes.

8      Q.    And you can go right into each one of

9  those claims, can't you?

10          MS. JONES:  Object to form.

11          But, Julie, you can answer.

12          THE WITNESS:  We have claim files for each

13  of our claimants so, yes.

14      Q.    (By Mr. Abourezk) Now, if we go to

15  "Defendants' Supplemental Responses to Plaintiff's

16  Third Set of Requests for Production of Documents" and

17  go to Request No. 10, can you read that here?  I have

18  it in front of us.

19      A.    Can you scroll and make it just a little

20  bit bigger?

21      Q.    (Complying.)

22      A.    Thank you.

23      Q.    Do you see Request 10 --

24      A.    Yes.

25      Q.    -- "all documents relating to the

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

1  implementation of the Alternate Payment Benefit

2  Rider."

3       And your answer was:  There are no documents

4  relating to the implementation of the Alternate

5  Payment Benefit Rider.  Correct?

6            MS. JONES:  I'm going to object to the

7  form.  That's actually not what that says.

8            But go ahead, Julie.  You can answer.

9            THE WITNESS:  The documents were produced

10 as part of the claims manual, so we did provide that.

11      Q.   (By Mr. Abourezk) Well, there's nothing in

12 the claim manual about the Alternate Payment Benefit

13 Rider, is there?

14            MS. JONES:  Object to the form of the

15 question.

16            You can answer.

17            THE WITNESS:  I would need to go review

18 the claim manual to confirm.

19      Q.   (By Mr. Abourezk) Well, you just got done

20 saying, though, you just tried to tell me that that's

21 in the claim manual and that was produced.  But as you

22 sit here, you don't know, there's nothing in the claim

23 manual about the Alternate Payment Benefit Rider, is

24 there?  Do you know?

25            MS. JONES:  I'm going to object to the

1  form, object to the form of the question.  She already

2  answered it.

3          But go ahead.

4      **Q.    (By Mr. Abourezk) Do you know?**

5      A.    I would need to go back and review the

6  claim manual.  I'm not familiar -- I did not memorize

7  the claim manual and I didn't attest that I was an

8  expert in claim manual, so I would want to go back and

9  review it to see what it says in there.

10     **Q.    Well, here is the claim manual.  Do you**

11 **see it in front of you?  It's numbered CGIC 241.**

12         MS. JONES:  I'm going to object.  The

13 claim manual is not in your deposition notice.  If you

14 want to ask her questions about a 126-page document,

15 she's going to need some time to review that.

16     **Q.    (By Mr. Abourezk) Well, here's the table**

17 **of contents.  Can you show me anyplace where it says**

18 **anything about the Alternate Payment Benefit Rider in**

19 **this document?**

20         MS. WIXTED:  Same objection.

21         MS. JONES:  I'm still going to object.

22 And just because it's not in the table of contents

23 doesn't mean it might not be somewhere else in the 126

24 pages.

25         And like you doing a word search right now

1  on your computer is not appropriate for the

2  deposition.  You can do that, if you want to go ahead

3  and do that, on your own time, you can.  But that's

4  not, that's not evidence appropriate for a deposition.

5  So I'm going to lodge an objection to that.

6              MR. ABOUREZK:  Yeah.  Can I ask a

7  question?

8              MS. JONES:  Yeah.  I'm done speaking, go

9  ahead.

10      **Q.    (By Mr. Abourezk) Okay.  My question is,**

11  **No. 1, can you point to any anyplace in this claim**

12  **manual where it even mentions the words "Alternate**

13  **Payment Benefit Rider"?**

14              MS. WIXTED:  Again, I'm going to object;

15  outside the scope of the deposition.

16      **Q.    (By Mr. Abourezk) Go ahead.**

17              MS. JONES:  You can answer if you can,

18  Julie.

19              THE WITNESS:  I would need to review the

20  document.  I'm not familiar with every page of the

21  document.

22      **Q.    (By Mr. Abourezk) Well, I'm going to do a**

23  **-- I just did a word search for "alternate payment**

24  **benefit" and that doesn't show up in this document.**

25  **Are you disputing that word search?**

1          MS. JONES:  I'm going to lodge an

2    objection.  Again, your word search during this

3    deposition is not an appropriate use of evidence.  If

4    Julie wants to review the entire document, she can do

5    so on her own.

6          I don't know what you're doing or trust it

7    so, therefore, objection lodged.

8          MR. ABOUREZK:  Okay.  You're --

9          MS. JONES:  Go ahead, Julie, you can

10   answer if you can.

11         THE WITNESS:  Can you repeat the question?

12   **Q.    (By Mr. Abourezk) Yeah.  Are you denying,**

13   **are you denying that the word search produces nothing**

14   **when I search for "alternate payment benefit" in this**

15   **document?**

16         MS. JONES:  Objection -- go ahead, Mike,

17   sorry.  Same objection.

18         Julie, you can try to answer.

19         THE WITNESS:  Yeah, I feel like I still

20   have the same answer.  I'm not able to look at every

21   page of the document or search it or know what's in it

22   based on your searches right now.

23   **Q.    (By Mr. Abourezk) Well, but you're willing**

24   **to testify, as you did just a minute ago, that the**

25   **documents that were responsive to that document**

1   request is the claim procedure manual as part of the

2   documents that were produced.

3        Are you still claiming that or are you going to

4   retract that?

5             MS. JONES:  I'm going to object to the

6   form of the question.  She was simply reading the

7   response that was written.

8             Julie, you can try and answer his question

9   if it makes sense to you.

10             THE WITNESS:  I would say we provide it as

11  a responsive document for the claims manual.

12        Q.    (By Mr. Abourezk) Okay.  Well, let's look,

13   then, back at Request No. 11:

14             "All documents concerning the

15   interpretation, application, or scope of the Alternate

16   Payment Benefit Rider."

17        You would agree with me, wouldn't you, that your

18   company is handling over 5,000 policies that have this

19   rider in it, correct?

20             MS. WIXTED:  Object.

21             MS. JONES:  Object to the form, but you

22   can answer.

23             THE WITNESS:  I would want to reference

24   the table that was above with the policies just to

25   confirm the number, but we are handling policies with

Page 34

1   this rider, yes.

2           Q.    (By Mr. Abourezk) Over 5,000 policies

3   containing the Alternate Payment Benefit Rider,

4   correct, over 5,000?

5           A.    Yes, as of December 2023.

6           Q.    But what you're saying is there is no --

7   your company has no documents that describe how that

8   rider is interpreted or applied?

9                 MS. WIXTED:  Objection form.

10                MS. JONES:  Objection, yeah.

11                You can try to answer, Julie.

12          Q.    (By Mr. Abourezk) Is that what you're

13  saying?

14          A.    We have the claims manual and we have the

15  policy itself.

16          Q.    Okay.  Now, the claim manual, we already

17  talked about that and we can go through it page by

18  page, but so what you're saying is other than what's

19  in the policy and what you say is in the claim manual,

20  there's no other documents telling claim people how to

21  apply this rider?

22                MS. JONES:  Object to the form of the

23  question.

24                Julie, you can try and answer.

25                THE WITNESS:  We provided what documents

 1  were responsive to the request.

 2          Q.    (By Mr. Abourezk) And there are no

 3  documents.  Your company has no documents explaining

 4  how this is supposed to be interpreted or implied.  Is

 5  that what you're saying?

 6                MS. JONES:  Object to form; asked and

 7  answered.

 8                Go ahead, Julie, you can try and respond.

 9                THE WITNESS:  Again, we've provided what

10  responsive documents that we had.

11          Q.    (By Mr. Abourezk) And that is the policy

12  and the claim manual.  Is that what you're saying?

13                MS. JONES:  Object to form.

14                Go ahead, Julie, you can try and answer.

15                THE WITNESS:  Based on what we provided,

16  we gave you what was responsive.

17          Q.    (By Mr. Abourezk) Now, I want to know, I

18  want to know exactly what you're saying is responsive.

19  You said the policy and the claim manual; is that

20  right?

21                MS. JONES:  I'm going to object.  You're

22  being argumentative, Mike.  She already answered the

23  question three times.

24                You can try and answer again, Julie.

25          Q.    (By Mr. Abourezk) No, I've got to pin this

1   down.  Is that what you're saying is responsive?

2              MS. JONES:  Well, you can read, you can

3   read the response that I wrote and that is responsive,

4   and then she can answer as to what I wrote.  That's

5   what you're --

6              MR. ABOUREZK:  No, I need to have her test

7   -- Sandy, you need to stop testifying.

8              MS. JONES:  No, I don't.  I'm objecting --

9              MR. ABOUREZK:  Stop testifying.

10             MS. JONES:  -- because your questions are

11  beyond the scope of the notice that you issued, Mike.

12             MR. ABOUREZK:  Stop testifying.

13             MS. JONES:  I'm not testifying, I'm

14  objecting that your questions are beyond the scope of

15  the notice that you issued, Mike.  She's answered the

16  question.

17      Q.     (By Mr. Abourezk) Is there any --

18             MS. JONES:  She can answer.

19      Q.     (By Mr. Abourezk) Is there anything else

20  that you're claiming is responsive to Request No. 11

21  other than the policy and the claim manual?

22      A.     I have no --

23             MS. JONES:  Same objection.

24             You can answer.  Go ahead.  Sorry, Julie.

25      A.     -- no further responsive documents other

1  than what we provided.

2           MR. ABOUREZK:  Court reporter, would you

3  read that back, that answer back to me, please?

4           (The record was read by the court reporter

5  as follows:

6           "ANSWER:  No further responsive documents

7  other than what we provided.")

8  BY MR. ABOUREZK:

9      Q.    Okay.  That's not an answer to my

10 question.  My question is:  Are you saying there's any

11 responsive documents other than the policy and the

12 claim manual?

13          MS. JONES:  I object that that -- isn't

14 that a direct response?  She said, "No further

15 responsive documents."

16     Q.    (By Mr. Abourezk) Answer, please.

17     A.    I agree with Sandy.  I don't understand

18 the question and what's different about your wording.

19     Q.    I'm just trying to get a black-and-white

20 answer.  Are you saying that there are no responsive

21 documents to Request No. 11 other than the policy and

22 the claim manual?

23          MS. WIXTED:  Objection to form; asked and

24 answered.

25          THE WITNESS:  Yes, we have no responsive

1   documents besides the claim manual and the policy.

2        Q.    (By Mr. Abourezk) Thank you.  Now, in

3   Request No. 12 of this, Request No. 12 of Defendants'

4   Supplemental Responses to Plaintiff's Third Request

5   for Production, asks for:  All documents supporting

6   Defendants' claim that the Alternate Payment Benefit

7   Rider does not provide benefits when a family member

8   provides assistance with ADLs.

9        And your answer is here.  Would you like to

10  review it?

11       A.    Yes.

12       Q.    You can tell me when you want to turn the

13  page.

14       A.    (Perusing document) -- and I'm good for

15  the next page.  (Perusing document) -- okay.

16       Q.    Okay.  Do you see here where it says:

17  "Continental has argued, in defending this lawsuit,

18  that Plaintiff was a family member of the insureds,

19  and so she was paid pursuant to the terms of the

20  Rider"?

21       Do you see that?

22       A.    Yes.

23       Q.    And does that mean that Continental

24  recognizes there is no family member exclusion that

25  applies to the Alternate Payment Benefit Rider?

Case 4:21-cv-00087-BMM    Document 119-7    Filed 01/03/25    Page 41 of 54

KING vs. UNITED STATES          JULIE BELKNAP 30(B)(6)          September 11, 2024
30(b)(6)

1          MS. JONES:  I'm going to object to the

2    form of the question.

3          Julie, you can try and answer.

4          THE WITNESS:  We do -- the alternate

5    payment benefit does not exclude family members from

6    providing care.

7          Q.    (By Mr. Abourezk) And has Continental ever

8    taken the position that it did exclude family members?

9          MS. WIXTED:  Objection to form.

10          MS. JONES:  Objection to form.

11          Go ahead, Julie.

12          THE WITNESS:  No.

13          Q.    (By Mr. Abourezk) And if that is the case,

14    those 111 claim files where Continental has made some

15    payment under the family -- or under the Alternate

16    Payment Benefit Rider, those 111 files would help us

17    understand whether Continental has ever told people

18    there's a family member exclusion that applies to this

19    Alternate Payment Benefit Rider; is that correct?

20          MS. JONES:  I'm going to object to the

21    form of the question; calls for speculation.

22          Julie, you can try and answer.

23          THE WITNESS:  Can you repeat your question

24    again?

25          Q.    (By Mr. Abourezk) Yeah.  If we wanted to

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

1  find out whether Continental has traditionally told

2  people they can't get benefits under the Alternate

3  Payment Benefit Rider if they're getting help from a

4  family member, if we wanted to find that out, one of

5  the ways we'd do that is by looking at those 111 claim

6  files where some sort of a payment was made under the

7  Alternate Payment Benefit Rider; is that correct?

8          MS. JONES:  Same objection.

9          Julie, you can try and answer.

10         THE WITNESS:  You could look at the 111

11 files, but I don't know that it's going to tell you

12 anything beyond Continental approved them for benefits

13 and paid them under the Alternate Payment Benefit

14 Rider.

15     Q.    (By Mr. Abourezk) Well, if someone told

16 the policyholder, "You can't get benefits if a family

17 member has given you the assistance," that should show

18 up in the claim file, shouldn't it?

19         MS. JONES:  Object to the form of the

20 question; calls for speculation.

21         Julie, you can try and answer.

22         THE WITNESS:  If someone called in, it

23 would be documented in the claim file what took place

24 in that conversation and it would have to be about

25 each of the individual benefits on the policy of

1    whether or not a family member is excluded or not.

2        Q.    (By Mr. Abourezk) And so by looking at

3    those individual 111 claim files, we can get an idea

4    of what it is that Continental tells people about the

5    Alternate Payment Benefit Rider, correct?

6            MS. JONES:  Objection; same, same

7    objection.

8            You already answered the question but,

9    Julie, you can try and answer again.

10           THE WITNESS:  You, by looking at the 111,

11   you would get a feel for people asking potentially for

12   alternate payment benefit or, generally, about filing

13   a claim on their policy.

14       Q.    (By Mr. Abourezk) Well, are you familiar

15   with what the requirements are for a claim file, what

16   is supposed to be maintained in a claim file?

17           MS. WIXTED:  Objection to form; beyond the

18   scope.

19           MS. JONES:  Julie, you can try and answer.

20       Q.    (By Mr. Abourezk) Go ahead.

21       A.    I was not in the claims department during

22   the time of this policy so I don't know what the

23   requirements would have been at that time.

24       Q.    Do you know what the requirements are

25   today?

1          MS. JONES:  Same objection.

2          Julie, you can try and answer.

3          THE WITNESS:  No, because again, I'm not

4    in the claims department at this moment.

5          **Q.    (By Mr. Abourezk) And if you did a word**

6    **search, if you did a word search of those 111 files,**

7    **you could find out whether the word "family members,"**

8    **is being used in that file, couldn't you?**

9          MS. JONES:  Again, I object to the form of

10   the question.  It's already been asked.

11         Go ahead, Julie, you can try and answer.

12         THE WITNESS:  I could search in each

13   individual claim file for a given word "family," but

14   it would also have to be reviewed to see the context

15   of what that word was used in.

16         **Q.    (By Mr. Abourezk) Well, so in other words,**

17   **you could, you admit that you can identify documents**

18   **in each of those 111 files that contain the word**

19   **"family," correct?**

20         MS. JONES:  Object to the form.

21         Julie, you can try and answer.

22         THE WITNESS:  I said within the claim file

23   I could search that, but I wouldn't be able to search

24   every document, as you mentioned, that's associated

25   with that policy.  So we get claim documents; I

1  wouldn't be able to research all of those,

2  necessarily.  But in a claim file itself, on an

3  individual basis, we can search for a word.

4      Q.    (By Mr. Abourezk) And that wasn't done.

5  You didn't search for the word "family" in any of

6  those 111 files, did you?

7          MS. JONES:  Object to the form of the

8  question.

9          Julie, you can answer.

10          THE WITNESS:  No.

11      Q.    (By Mr. Abourezk) Well, you know that we

12  issued a request here, it's Request No. 29, for

13  Plaintiff's Fourth Set of Document Requests.  And I'm

14  going to look at Request No. 30.

15      We asked you to identify any documents from a

16  claim file where the policy included the Alternate

17  Payment Benefit Rider, the claim was paid, and the

18  document includes the word "family."

19      Do you see that request?

20      A.    Yes.  Can you make it a little bit bigger,

21  please?

22      Q.    Sure.  (Complying) -- do you see it?

23      A.    Yes, thank you.

24      Q.    But you're telling me that there was no

25  search for the word "family" in any of those files.

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

1  Is that what you're saying?

2            MS. JONES:  Object to form.

3            MS. WIXTED:  Objection.

4            MS. JONES:  You can try answer.

5            THE WITNESS:  So on this request, you're

6  talking about all documents in a claim file which is

7  not just our internal claim notes.  We can search our

8  internal claim notes for the word "family," but we

9  can't search every document associated with a claim

10 file for the word "family."

11           MS. JONES:  Beyond that, Mike, I have

12 instructed my client not to search 111 claim files.

13 I've told you that from the get-go.  If you want to

14 file a motion to compel us to do so, you can, but we

15 did not, so if that helps your line of questioning

16 here.  Hopefully, that does it.

17      Q.    (By Mr. Abourezk) Yeah, I just want to

18 nail it down.  There was no effort to make this search

19 in Request No. 30, correct?

20           MS. JONES:  At my instruction, that's

21 construct.

22           And, Julie, you can answer if you want to

23 make it clearer for Mike.

24           THE WITNESS:  We did not search individual

25 claim files for the word "family."

1    Q.    (By Mr. Abourezk) Well, then, why does it

2    say here in the Response to No. 30:

3              "Continental is not able to locate any

4    responsive documents by performing a word search for

5    the word 'family'"?

6        Are you saying that you can't perform a word

7    search for the word "family"?

8              MS. JONES:  Object to form.  I've already

9    explained this.

10             But go ahead, Julie, you can try and

11   answer.

12             THE WITNESS:  We can search the claim

13   notes for the word "family" but not the documents

14   themselves.

15   Q.    (By Mr. Abourezk) Well, when you say you

16   can't search the documents themselves, what if, what

17   if Continental created a letter and put that in the

18   claim file?  That's a Word document, correct?

19             MS. JONES:  Object to form; calls for

20   total speculation.

21             Julie, you can answer if you know.

22             THE WITNESS:  It, most likely, is a PDF,

23   not a Word document itself.  But, again, it's because

24   I can only the search the document type or the index

25   values on it.  I couldn't search the content of it

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

1  unless I opened each individual document associated

2  with each individual file.

3           MR. DAVIS:  Signing off, bye all.

4           MR. ABOUREZK:  What was that?

5           MR. DAVIS:  I said I'm leaving the

6  meeting, Mike.

7           MR. ABOUREZK:  Oh, okay.

8           MR. DAVIS:  Thanks.

9           MR. ABOUREZK:  Okay.

10          MS. JONES:  Thanks, Max.

11          MR. DAVIS:  You bet, guys.

12          MR. ABOUREZK:  We come to the Answers to

13 Defendants' Supplemental Responses to Plaintiff's

14 Third Request for Production that are dated May 16,

15 2024, and we do not have a signature.

16          Counsel, I couldn't find any, any signed

17 version of this.  Am I wrong?

18          MS. JONES:  Off the top of my head, I

19 don't know.  I can look for it.  If not, I'm happy to

20 sign it.  I think the little "S" probably denotes

21 signature.  But I send everything to Max to put

22 through so perhaps it was missed somewhere, I don't

23 know.

24      Q.   (By Mr. Abourezk) Okay.  And I'm asking

25 the witness now:  Can you confirm for me today, you're

Page 47

1  looking at -- I don't know why that's still on there.

2       The copy that you were looking at, were they

3  signed?

4       A.    I'm not positive on that one, I don't

5  know.

6            MS. JONES:  Probably not, Mike, because we

7  looked at your exhibit.

8            MR. ABOUREZK:  Okay, then.  Then why don't

9  we --

10            MS. JONES:  Aren't we all looking at the

11  same thing?

12            MR. ABOUREZK:  We have these on, we have

13  these on May 16, 2004, that are not signed.  Then we

14  have the supplemental objections and responses to the

15  first set of interrogatories dated May 23, 2024, that

16  are not signed.  Then we've got responses to the

17  fourth set of requests for production.  These do have

18  a signature.

19            I guess what I want to do is confirm, and

20  maybe you can do this, Sandy, I mean, are these true

21  and correct answers or are you going to change them?

22            MS. JONES:  I'm not going to -- I mean, if

23  you have them, I'm assuming - I apologize, I have a

24  barking dog - if you have them, I assume they're final

25  but I can't, as I sit here, tell you that you have as

1  your exhibit what I produced.  I'd have to look at

2  them side-by-side.

3          I'm assuming that's correct.  I can check

4  that for you after the fact but I can't do that now.

5  I mean, it's your exhibit, so you didn't ask me about

6  it beforehand.  I don't know.

7          MR. ABOUREZK:  Okay.  Let's take a break

8  for a few minutes and I'll finish.

9          MS. WIXTED:  Before the break, Mike, you

10  had somebody come in behind you during the deposition.

11  Can you tell us who that was and whether that person

12  is still in the room?

13          MR. ABOUREZK:  Yeah.  Who's speaking?

14          MS. WIXTED:  Nicole.

15          MR. ABOUREZK:  My son, my son came in and

16  sat down.  He didn't know I was on a conference call.

17  And he's gone.

18          MS. JONES:  So how long do you want?  Ten,

19  we'll take ten minutes so Julie can use the restroom,

20  and whatnot, since she's in the conference room.

21          VIDEOGRAPHER:  The time is that 9:03 a.m.

22  We're off the record.

23          (A brief recess was taken.)

24          VIDEOGRAPHER:  The time is 9:13 a.m.

25  We're on the record.

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

1          MS. JONES:  Right.  Once again, I just
2    want to make sure my colleague Nicole is there.
3          Nicole, are you still there?
4          MS. WIXTED:  I am here.
5          MS. JONES:  Okay, great.  Go ahead.
6    Apologies, Mike.
7          MR. ABOUREZK:  I don't have any further
8    questions.
9          MS. JONES:  Okay.  So that ends your
10   deposition.
11          VIDEOGRAPHER:  Anybody else?
12          MS. JONES:  No, I don't have any
13   questions.
14          VIDEOGRAPHER:  Okay.  This concludes the
15   Rule 30(b)(6) CGIC Videotaped of Julie Belknap.
16          The time is 9:13 a.m.  We are off the
17   record.
18          MR. ABOUREZK:  Well, before you go off the
19   record, one last thing.
20          VIDEOGRAPHER:  Okay.
21          MR. ABOUREZK:  Are we back on the record?
22          VIDEOGRAPHER:  We're on the record.
23          MR. ABOUREZK:  Okay.  Yeah, I'm moving to
24   sequester witnesses because I don't want contact
25   between witnesses while these depositions are taking

Nordhagen Court Reporting
1734 Harrison Avenue, Butte, Montana - 406.494.2083 - QA@MTQA.NET

 1  place.

 2              MS. JONES:  I don't have any objection to

 3  that.

 4              MR. ABOUREZK:  Excuse me?

 5              MS. JONES:  I have no objection to that.

 6              MR. ABOUREZK:  Okay.  That's all.

 7              VIDEOGRAPHER:  We're off the record.

 8              (Signature reserved.)

 9

10                    *    *    *    *    *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   STATE OF MONTANA      )
                            : ss.
 2   County of Silver Bow )

 3

 4       I, Candice L. Nordhagen, Court Reporter - Notary

 5   Public in and for the County of Silver Bow, State of

 6   Montana, do hereby certify:

 7

 8       That the witness in the foregoing Videotaped

 9   30(b)(6) deposition, Julie Belknap, was by me first

10   duly sworn according to law in the foregoing cause;

11   that the deposition was then taken before me at the

12   time and place herein named; that the deposition was

13   reported by me in machine shorthand and later

14   transcribed by computer, and that the foregoing

15   fifty-one (51) pages contain a true record of the

16   witness, all done to the best of my skill and ability.

17       IN WITNESS WHEREOF, I have hereunto set my hand

18   and affixed my notarial seal this _____ day of

19   _____, 2024.

20

21                         _____

22                         Candice L. Nordhagen
                           Notary Public for the State of
23                         Montana residing at Butte,
                           Montana.  My commission
24   (NOTARIAL SEAL)       expires October 26, 2024.

25
```

```
1    DEPOSITION OF:    JULIE BELKNAP

2    DEPOSITION DATE:  SEPTEMBER 11, 2024

3    IN RE:            KING vs. CGIS, et al.

4    COURT REPORTER:   CANDICE L. NORDHAGEN

5

6    I have read my deposition and make the following
     corrections or additions:
7

8    PAGE   LINE   CORRECTION

9

10

11

12

13

14

15

16

17

18

19

20

21

22        Signed under penalty of perjury this ___7___ day

23   of _October___, _2024_.

24                         _Julie E. Belknap_____
                               Julie Belknap
25
                                              Page 53
```