# EXHIBIT H

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| MICHELLE KING, as the Personal Representative of the Estate of ROBERT GLENN KING,<br>  Plaintiff,<br>vs.<br>UNITED TEACHER ASSOCIATES INSURANCE COMPANY, CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN LIFE INSURANCE COMPANY, CONTINENTAL LTC, INC., fka CONTINENTAL INSURANCE, INC., and DOES 1-V,<br>  Defendants. | Cause No. CV-21-87-GF-BMM<br><br>**DECLARATION OF JULIE BELKNAP IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** |

I, Julie Belknap, declare:

1. I am over 18 years of age and am fully competent to make this declaration in support of Continental General Insurance Company's Opposition to Plaintiff's Motion to Compel Discovery.

2. I am currently employed by Continental General Insurance Company ("CGIC") and hold the position of assistant Chief Operations Officer ("COO") where I direct the strategic operations team. I was deposed in this matter and am familiar with the claims made by Plaintiff Michelle King in this case.

3. In my capacity as assistant COO of CGIC, I am familiar with the use of CGIC's document repository system, OnBase by Hyland ("OnBase").

1

## **CONTINENTAL'S DOCUMENT REPOSITORY SYSTEM**

4. OnBase is a document repository system that is commonly used both in and beyond the insurance industry. OnBase houses documents such as the insured's application for coverage, a copy of the applicable policy form, documentation related to any benefit changes elected by the insured, and documents submitted in connection with any claim submitted by the insured. Each document contained within the OnBase repository is sorted under and organized by the individual policy number with which it is associated when applicable.

5. CGIC currently licenses version 18 of OnBase, which is more than sufficient for our business purposes. The primary reason(s) to upgrade to a later version would be only to receive new features and/or functionalities offered in newer version of the software. CGIC is currently satisfied with version 18 of OnBase, as the software is supported by Hyland and it meets the Company's current needs with respect to storing documents, providing access to information to its employees, and administering claims.

6. Version 18 of OnBase does not automatically include any of the "Full-Text Search" capabilities referenced by Plaintiff. Instead, Hyland requires the purchase of a separate license and subscription payments to access those features on version 18 of the software. CGIC did not opt to purchase any full-text search licensure because the Company has never had occasion to perform such a word

search across files within OnBase as part of its business. This decision not to purchase additional licensure was made well before Plaintiff asked us to perform "word searches" across claim files/policies.

7.     CGIC does not have the ability to perform "word searches" across policies/claim files or even sometimes within a single policy/claim file. Continental's primary "search" capabilities in its version of OnBase allow its users to search within standardized "keyword" fields of each document within the repository. For example, OnBase provides "keyword" fields for each document type such as policy number, policyholder first name, and policyholder last name, among others. Searching within these keyword fields allows Continental employees to quickly identify all documents associated with a specific policy number or insured but would not support the broad word search that is contemplated in the written requests. Put differently, Continental could "search" for the terms "Alternate Payment Benefit Rider" or "family" in one of the OnBase "keyword" fields (such as policyholder first name), but such a search obviously would not return any results. This search function does not allow users to search the content of the document itself.

8.     Further, not every document is 'searchable'. Many documents come to CGIC via facsimile or photograph, which are uploaded into OnBase as images. These images do not have optical character recognition (OCR). Similarly, many medical records contain hand-written notes from providers that would not be

3

searchable even if the document were provided in a PDF format. While of course a search can be "performed," the result will be none, even if the "word" is contained within the document. For example, an MS Word document or an Adobe PDF that has been OCR'd could be searched, and the results would likely be accurate, but a scanned image of a handwritten document or medical record would not be.

9.  To demonstrate these limitations to opposing counsel in this matter, at their request, CGIC performed a search for the term "Robert" within the medical records contained in Mr. King's policy/claim file. Even though the word "Robert" appears many times throughout Mr. King's medical records, the OnBase search results were "none" because the medical records (which are also nearly a decade old) were not provided to CGIC in a searchable, OCR format. Accordingly, the only way to identify each instance of "Robert" appearing in Mr. King's medical records would be for a person to read each document and perform a manual search of the documents, page by page.

10. There are also business reasons <u>not</u> to allow for cross-file searchability. For instance, claim examiners need to focus solely on the claim they are handling, not reference other claims or documents in another claim file, as each claim is unique. Further, the protected health information (PHI) we receive as a Covered Entity under HIPAA requires that we maintain the confidentiality of our insureds

and their respective health condition(s). There is simply no business purpose for cross-file searching.

11. CGIC can determine certain information about a policy or claim, such as whether a claim has been made and/or paid on an individual policy. But the Company has no way besides a manual review to determine the totality of circumstances of a claim approval or denial or why a particular benefit was or was not paid. That is because any denial is circumstantial, based on the unique health and/or care information for each insured.

12. CGIC stores materials within policy/claim files on OnBase that could contain attorney-client privileged information. For example, issues discussed with both in-house and outside counsel, including underwriting issues, coverage issues, claims handling issues, and other relevant correspondence may be kept in OnBase with a claim/policy file.

## **BURDEN ON CGIC**

13. To identify and provide entire claim/policy files in response to Plaintiff's Request for Production numbers 8, 29, 30, and 31, CGIC will need to work within the limitations of the system to identify the implicated policies, then collect all documentation contained within the policy/claim files for manual review. CGIC estimates that it would take approximately 30 minutes to 5 hours, depending

on the size of the file, per implicated policy/claim file, to collect and package the documents for each claim file for counsel to review.

14. Most policy/claim files contain a range of approximately 150-5,000 pages, again depending on (i) the age of the claim; (ii) the medical records collected/at issue; (iii) the care records of the insured(s); and other general claim information (*i.e.*, correspondence, invoices, beneficiary information, medical reviews, assessments, re-certifications, billing). For those requests that require review for specific keywords, a manual review will need to be performed of each page and/or individual document for each file. CGIC estimates that its employees could reasonably review 1 page per minute for the relevant search terms by reading those documents and then sorting them as "responsive."

15. In order to respond to Plaintiff's Request for Production numbers 29 and 30, CGIC (or its counsel) would need to perform a manual search of every document stored within an OnBase policy/claim file of an insured who has submitted a claim under a policy containing that has an "Alternate Benefit Payment Rider" or similar riders. A total of 892 policies are implicated in response to Request for Production numbers 29 and 30, as policies that (i) were issued containing the same Rider or a similar rider; and (ii) any claim was made under the policy at some point during the time the policy was in force.[1] Accordingly, it would take Continental

---

[1] This just means the policy *has* a rider, not that the claim was paid using the rider.

approximately 446 hours just to gather the implicated policy/claim files for review. Then, Continental would need to manually review the files document-by-document, as described above, for the term "family." Using a median estimate of 2,500 pages per claim file, identifying the documents containing the word "family" in the relevant policy files would require approximately 37,166 hours of manual labor (2,500 pages at 1 minute per page, multiplied by approximately 892 files). CGIC would then need to provide the responsive documents, if any, to its outside counsel for review and redaction in compliance with HIPAA and to protect its right to attorney-client privilege. This would be cost-prohibitive.

16. At 2,000 hours per year, that constitutes nearly 19 years' worth of full-time employment. CGIC has a sizeable staff, but those individuals have full-time jobs. There is no one available full-time to do this for Plaintiff. Accordingly, CGIC would need to hire many individuals to work full-time for several years to respond to Requests 29 and 30 and likely cost the Company approximately one million dollars in wages and other costs associated with employment. If CGIC had to pay outside counsel for document review to do this, the cost would probably be even greater.

17. Similarly, in order to respond to Plaintiff's Request for Production number 8, CGIC would need to perform a manual search of every document stored within OnBase because there is no "keyword" search field that would contain the

requested terms of "Alternate Payment Benefit Rider" or "Alternative Payment Benefit Rider". There are thousands of documents stored in the OnBase repository containing an unknown number of pages. Manually reviewing these documents for the specified search terms would be an insurmountable task.

18. In order to respond to Plaintiff's Request for Production number 31, CGIC would need to gather the documents contained within each of the "111 Claim Files." CGIC estimates it would require approximately 60 hours to collect the documents contained within each of the 111 Claim Files; however, it could take longer depending on the size of the particular claim. For instance, in a recent, unrelated matter, sending the claim file to outside counsel took nearly five hours given the sheer size of the claim file (thousands of pages). Outside counsel would then need to review and redact PHI in compliance with HIPAA and to protect its right to attorney-client privilege. This cost would be tremendous.

19. I am competent to testify about the matters set forth in this declaration and I declare under penalty of perjury that the foregoing is true and correct.

Executed on 01/03/2025                         *Julie E. Belknap*
                                                Julie Belknap